## J. Lawrence Martin *vs.* City of Chelsea.

Suffolk.    January 16, 1900. — March 3, 1900.

Present: Holmes, C. J., Morton, Lathrop, Barker, & Hammond, JJ.

*Personal Injuries occasioned by falling into an Excavation in the Street
of a City — Reasonable Care and Diligence.*

In this case, which was an action for personal injuries occasioned to the plaintiff by
falling into an excavation ten feet in length between the rails of a street railway
track where the defendant city was building a tide-water in a sewer, the defend-
ant being engaged in a lawful work, having erected barriers with signs to show
that the way was not open to public travel, having had a watchman on the spot
night and day, and what happened not reasonably being expected to happen, it
cannot be said that there was any want of the "reasonable care and diligence"
required by the Pub. Sts. c. 52, § 18.

Tort, for personal injuries occasioned to the plaintiff by fall-
ing into an excavation between the rails of a street railway track
in the defendant city. Trial in the Superior Court, before *Sher-
man,* J., who declined to give, among other rulings requested by
the defendant, the following: "There is no evidence to warrant
the jury in finding that the defendant was negligent, and the
verdict must be for the defendant."

The jury returned a verdict for the plaintiff; and the defend-
ant alleged exceptions, which appear in the opinion.

*L. L. G. de Rochemont,* for the defendant.

*O. A. Marden,* for the plaintiff.

Lathrop, J. The alleged defect in the highway for which
the plaintiff seeks to recover was an excavation ten feet in
length, between the rails of a street railway track, on Pearl
Street in Chelsea, where the defendant was building a tide-gate
in a sewer. The nearest point of the excavation from the corner
of Williams Street and Pearl Street was fifty-three feet. The
plaintiff, in the daytime, came through Williams Street with the
intention of taking a car for East Boston at the corner of that
street and Pearl Street. The exceptions state that there was a
white post at that corner, and that the next regular stopping
place was several hundred feet distant. It is a matter of com-
mon knowledge that while street cars stop at white posts to re-

ceive or to discharge passengers, they do not stop at such posts unless some one is there who wishes to enter the car, or some passenger desires to leave the car.

Just before the plaintiff reached the corner, a car on Pearl Street, bound for East Boston, passed the corner going slowly. The plaintiff made no signal either to the motorman or to the conductor, and the car did not stop. The plaintiff thereupon ran after the car hoping to catch it, and ran between the rails of the track upon which the car was; and, after the car passed over the excavation, he fell into it. He did not see it before falling, as 'the car hid it from him. He was familiar with the rule of the road as to where the cars should stop.

The exceptions further state that at the time of the accident, the part of the street on the right hand side of the car tracks was so encumbered that it was not in condition for travel, and that it was plain to be seen that it was not; that the sidewalk and that side of the street were encumbered by dirt and stones taken from the excavation, and by other materials; that, at the corner of Pearl Street and Williams Street, on the sidewalk, there was a wooden horse, with a sign "No passing through" on top; a little nearer the trench, and between the sidewalk and the car tracks, another wooden horse, bearing a similar sign, was placed; and beside the trench and on the other side of the tracks, there was a similar horse. There was also a man stationed at the excavation day and night, to guard the same. At the time of the accident his view of the plaintiff was cut off by the approaching car.

The plaintiff testified that when he ran after the car, he did not look to see what obstructions were in the street; that he kept his eyes fixed pretty constantly on the car, which was directly in front of him; and that he was thinking more about getting the car than anything else.

It seems to us very doubtful upon these facts whether the case should not have been taken from the jury, as requested, on the ground that there was no evidence to warrant the jury in finding that the plaintiff was in the exercise of due care. It is, however, unnecessary to decide this point, as we are of opinion that there was no evidence of negligence on the part of the defendant. It was engaged in the performance of a lawful work. It had erected

barriers with signs to show that the way was not open to public travel. It had a watchman on the spot night and day. What happened could not reasonably be expected to happen; and we see no ground on which it can fairly be said that there was any want of the "reasonable care and diligence" required by the Pub. Sts. c. 52, § 18.

It remains to consider the cases of *White* v. *Boston,* 122 Mass. 491, and *Blessington* v. *Boston,* 153 Mass. 409, relied upon by the plaintiff. In the former case the plaintiff was injured in the night time, while walking upon the sidewalk, by stepping into a trench at the end of the sidewalk. There was no barrier upon the sidewalk, although there was one on the street, which was being repaired. This case was properly held to present a question for the jury.

In *Blessington* v. *Boston,* there was no request that the case be taken from the jury; and the only question before the court was whether a request, which assumed that there had been a momentary negligence on the part of servants for whom the defendant was responsible should have been given.

*Exceptions sustained.*