WILLIAM KANE, Respondent, *v.* THE CITY OF YONKERS, Appellant.

1. NEGLIGENCE — INJURY TO PEDESTRIAN RESULTING FROM FALLING THROUGH CITY BRIDGE UNDERGOING REPAIRS — CONTRIBUTORY NEGLIGENCE. Where a municipality, for the purpose of repairing a bridge which is part of its street system, has fastened the gates in such a way that they could not be opened, except by springing them in order to make an aperture through which a human body could pass, and has barricaded the gates with strong timbers, it is not liable for an injury resulting to a traveler in the night, who, knowing the condition of the bridge, forces his way through the gates, and in attempting to cross it falls to the ground below, although no warning light was displayed and the gates might have been fastened in such a manner that they could not have been forced open.

2. TRIAL. Upon the trial of an action to recover damages for such an injury a refusal to charge, that if the jury found that force was required to open the gates at the time the plaintiff went through he could not recover, is erroneous.

*Kane* v. *City of Yonkers*, 43 App. Div. 599, reversed.

(Argued December 19, 1901; decided January 14, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 1, 1899, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis A. Winslow* for appellant. The proof showed that there was no negligence on the part of the defendant, and the motion for a nonsuit should have been granted. (2 Dillon on Mun. Corp. § 1017; *Cusick* v. *Adams*, 115 N. Y. 55; *Splittorf* v. *State*, 108 N. Y. 205; *Donahue* v. *State*, 112 N. Y. 142.) The plaintiff was guilty of contributory negligence. The motion for a nonsuit made at the close of plaintiff's case and renewed at the conclusion of the case should have been granted. (*McCabe* v. *City of Buffalo*, 18 N. Y. Supp. 389; *McNish* v. *Village of Peekskill*, 91 Hun, 324; 1 S. & R. on Neg. [5th ed.] § 376.)

*John F. Brennan* for respondent. The questions of negligence and contributory negligence were issues of fact. (*City of Yonkers* v. *N. Y. C. & H. R. R. R. Co.*, 32 App. Div. 474; *Pomfrey* v. *Vil. of Saratoga Springs*, 104 N. Y. 459; *Weston* v. *City of Troy*, 139 N. Y. 281.)

O'BRIEN, J. The judgment in this case awarded damages to the plaintiff for a personal injury sustained by him in falling through what is known as the Vark street bridge, on the night of December 23d, 1897. This bridge is located at a point where the street intersects the railroad tracks and constitutes the overhead crossing of the railroad for travel from

the city or some parts of it to the docks on the Hudson river. The bridge was originally constructed by private parties for their own use and convenience, but the city has, since its erection, assumed such control over and relations to it that under the decisions of the courts it may be regarded for all the purposes of this case as a part of the defendant's street system. (*City of Yonkers* v. *N. Y. C. & H. R. R. R. Co.*, 32 App. Div. 474; affd., 165 N. Y. 142.)

The decision of the court below was not unanimous, and, hence, two questions are open for review in this court: (1) Whether there was any proof of negligence on the part of the defendant to sustain the verdict. (2) Whether it was competent for the jury to find from all the evidence in the case that the plaintiff was free from contributory negligence. In order to decide these questions we must resort to the facts and the evidence as they appear in the record. There may be and probably is a shade of difference between the version of the plaintiff and that of the defendant's witnesses, but in the main there is practically little if any dispute with respect to the controlling facts. The plaintiff was the captain of a schooner navigating the river, transporting cargoes of brick. He landed at the dock in the city from the vessel, which he tied up there on the twenty-second of December, 1897. The next day, sometime in the afternoon, he went from the vessel up to the city to purchase a pair of mittens and a pair of stockings, an errand which would occupy about half an hour. He started on the errand about three o'clock in the afternoon. It seems that there are two bridges crossing the railroad on the way from the dock to the city, one of wood and the other of iron. The latter is the Vark street bridge where the plaintiff was injured, but both bridges are close together and separated only by a brick wall about four feet high. The wooden bridge is called the Lawrence bridge, and it was that bridge the plaintiff crossed when on his way to the city. The other bridge at Vark street had been dismantled sometime before and was not in use, as the planking had all been removed, leaving only the iron framework and girders in place. This had been

done in order to repair the bridge, and the condition of the structure could have been seen by any one crossing the wooden bridge. The evidence tended to show that the plaintiff after making such purchases in the city as he desired, returned to his vessel and then later went back to the city again. If so, he must have crossed the wooden bridge at least three times in the course of the day and evening. He visited two saloons in the course of the evening and, as he admits, drank some beer, but to what extent he was affected by it does not appear. There is nothing to show that he was not entirely capable of taking care of himself. At all events, it appears that sometime between eleven and twelve o'clock on a dark night he started from one of the saloons to go back to his vessel, but on reaching the wooden bridge over which he passed on his way from the dock to the city, he found the gates closed and locked and his passage in that way barred, and after attempting to open them, failed. He then attempted to cross by the iron bridge, or the Vark street bridge, as it is called, which was not passable at all, since the covering or roadway had been entirely removed. It was doubtless a question for the jury to determine whether he knew or should have known the condition of this bridge. He found this bridge also barred by gates fastened with a chain, with heavy timbers in front of them, but it appears from the condition in which the gates were found early in the following morning, that the plaintiff managed to get through them in some way and got on the girders of the dismantled bridge and, of course, immediately fell through upon the railroad track, a distance of about twenty feet, where he was found soon after by the police in an unconscious condition and taken to the hospital.

The defendant was bound to use reasonable care in guarding this dismantled bridge at night, and the plaintiff was bound to use reasonable care while on his way to the river at such a late hour. The question here is whether the plaintiff or the defendant or both were at fault. It seems to us that both of these questions must be determined against the plaintiff upon the evidence contained in the record. It appears

from the evidence that on the night of the accident the bridge upon which the plaintiff entered was guarded and barricaded in the following manner : In the first place, there were two swinging gates extending entirely across the end of the bridge and closing about the middle that were eight or nine feet high. Outside these gates and extending entirely across the end of the bridge there were two timbers, four by eight inches in size and about twenty feet long ; one of them laid on top of the framework of the bridge, about three or four feet from the floor and snug up against the gate. The other timber had one end resting on the ground and the other end upon the same framework, three or four feet from the ground. On the west side of these gates there was a spar beam in size about four by five or six inches. This spar was about three feet from the flooring and was fastened by three bolts upon one-half of the gate. The gate across the end of this iron bridge was in two parts, with the hinges on the outside of the bridge and the gates closing in the middle. This spar on the west side of the bridge was fastened by three bolts ; on the south half of and connecting with the bridge was a chain. It is plain that the plaintiff had to surmount these obstacles before he could get upon the bridge on the night in question. The testimony shows that on the morning after the accident it was found that the two timbers were still in place, but had been moved forward from in front of the gate about a foot or eighteen inches, and that there was a loose wire around the center pieces of the gate where they came together, and that the pole on the back of the gates was fastened solid. The witness who looked over the situation early on the morning following the accident states that he took hold of the gates, one in either hand, to see whether he could force them and get through. He says he found it was impossible to move the north gate back because it was held by the pole, chained fast to the south post ; that is, the spar on the west side of the gate. He says that the south gate he could pull forward somewhat, and there was room enough by exerting all the force he could, by forcing the two gates apart, one by

either hand, to climb over one timber and under the other and crowd himself through between the two gates. It was impossible, he says, to swing the gates any wider than that. This description of the situation on the morning after the accident does not seem to be contradicted.

We think that it cannot fairly be said that the plaintiff, who managed to get on to this dismantled bridge on the night in question, in the face of such obstacles, exercised ordinary care, or was free from negligence. Assuming that he did not know that the covering of the bridge had been removed, he did know what must have been apparent to every reasonable man that the closed gates and timber barricades at the entrance of the bridge were a signal and warning of danger. When a traveler in the night finds a street or the approaches to a bridge guarded and barricaded in such a manner and persists in overcoming the obstacles, it must be held that he voluntarily courted the danger which it was intended to guard against. Nor is it apparent that the defendant neglected any duty imposed upon it under the circumstances. It is true that it might have lighted the entrance to the bridge and possibly have so locked and fastened the gates that they could not be forced open. But the obligation to exercise reasonable care in this respect did not require the city to go as far as that. When it fastened the gates in such a way that they could not be opened, except by springing them in order to make an aperture through which a human body could pass, and barricaded the gates with strong timbers, it did all that in reason could be required of it, and as the plaintiff persisted in overcoming these obstacles and got upon the bridge, it cannot be said that he was entirely free from fault. There is nothing in the record to show that on the night in question, when the plaintiff persisted in going upon this dismantled bridge, across the barriers of timber and through the fastened gates, that he was under any such stress of circumstances as would warrant any reasonably prudent man in disregarding the physical obstructions which he found in his way, and which, obviously, suggested danger. For aught that appears in the record,

there were other routes by which he could have reached the dock, which was the point of his destination, without taking the risks that he did in attempting to cross a bridge that was surrounded with what any reasonable mind ought to have taken as danger signals. In view of the condition in which the gates and timbers were found, as early as half-past six on the following morning, the manner in which he managed to get upon the bridge must be largely a matter of conjecture; but however it was accomplished, it is impossible to reconcile the plaintiff's conduct with the exercise of ordinary care and prudence on his part.

The defendant's counsel requested the court to charge the jury that if they found that force was required to open the gates at the time the plaintiff went through, that he could not recover. The court refused to charge this request and the defendant's counsel excepted. The court submitted to the jury the question whether, under all the circumstances, the plaintiff, in going through the gates in the condition in which he found them, was or was not negligent. It is said that some force was necessary to open the gates under any circumstances, but the language of the request really excluded the idea that the plaintiff could have opened the gates in the ordinary way. Considering the character of the evidence as to how the gates were fastened and barricaded at night and found in the morning after the accident, we think that the request should have been charged. It was entirely competent for the jury to find from all the evidence that the plaintiff not only moved the timbers from the gates, but must have exerted considerable force or pressure in springing them apart in order to go upon the bridge. The request was, we think, a reasonable one, since it called only for a fair application of the rules of law in the disposition of the evidence by the jury.

The judgment must, therefore, be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., GRAY, HAIGHT, LANDON and WERNER, JJ. concur; CULLEN, J., not sitting.

Judgment reversed, etc.