No. 23,351.

Eva Conley, *Appellee*, v. The City of Kansas City, Kansas, and
Simon P. Kramer, doing business as Kramer Construction
Company, *Appellants*.

### SYLLABUS BY THE COURT.

Negligence—*Obstruction in City Street—Personal Injuries—No Negligence
Shown*. Plaintiff, in the nighttime, while walking to her home came to a
street which was in process of being repaired. At or near the point where
she entered the street, the contractor had placed a barricade across the re-
paved portion and had stationed a watchman who spoke to the plaintiff and
told her not to walk in the street but to stay on the sidewalk until she got
to the alley or crossing, then she could go out into the street. Before reach-
ing the alley she started across the park strip to get into the street and was
injured by falling over some pieces of iron water pipe which the contractor
had left lying lengthwise on the parking. Claiming that defendants owed
her the duty to give her warning of the presence of the water pipe or to
have placed lights thereon, she sued the city and the contractor for dam-
ages. *Held*, that the facts stated failed to show negligence on the part of
the defendants.

Appeal from Wyandotte district court, division No. 3; William H. Mc-
Camish, judge. Opinion filed December 10, 1921. Reversed.

W. L. Wood, H. J. Smith, A. H. Skinner, and William Drennon, all of Kan-
sas City, for the appellants.

W. W. McCanles, A. J. Herrod, and H. S. Roberts, all of Kansas City, for
the appellee.

The opinion of the court was delivered by

Porter, J.: Eva Conley, a woman of about fifty years, while
walking on a street in Kansas City in the nighttime, stumbled over
several pieces of iron water pipe and received serious injuries. The
street was being repaved by the Kramer Construction Company
under a contract with the city. An action for damages against the
city and the construction company resulted in a judgment in plain-
tiff's favor, from which defendants appeal.

The accident occurred on August 6, 1915, about nine o'clock in the
evening. The petition alleges that defendants carelessly placed
upon the part of the street "ordinarily used for travel by pedes-
trians" the water pipes in question and other materials "and neg-
ligently allowed the same to remain in and upon said portion" of
the street; that it was the duty of the construction company in the
prosecution of the work of repair to keep the portion of the street
"ordinarily traveled by pedestrians in a safe condition" for travel,

and to place signal lights or other signals on or about the water pipe in the nighttime to warn the traveling public of the unsafe obstruction, which duty the construction company wholly failed to perform.

The answer was a general denial with pleas of contributory negligence.

Wyandotte street runs in an easterly and westerly direction. It was being repaved between Twenty-first and Twenty-second streets. The construction company had placed barricades across Wyandotte at Twenty-first street and Twenty-second street and kept a watchman there at night. Plaintiff testified that she was returning to her home and reached Wyandotte street going east.

"It was dark. When I started to walk from Twenty-second street down Wyandotte a man rose up and said, 'Oh, Lady! don't go out on that street, stay on the sidewalk until you get further down by the alley—the crossing, then you can-go out'; that is all he said. I stepped right back on the sidewalk and walked on toward my home. When I got down to the crossing—it was an alley, I call it an alley; it was a parkway, some of them call it a crossing. . . . When I got down to this point, I started to go out in the street and I fell on something. . . . I was just stepping out there; I was going to walk down the middle of the street. Well, I always had a habit, my mother always told me to walk in the middle of the street after night, I was afraid of alleys. . . . I fell into the street. . . . The first thing I knew a man asked me if I was hurt. There were no lights about there. It was perfectly dark. As near as I can tell I fell over an iron pipe. . . . I could tell it was iron pipe by the sound of it when I . . . went back over it. . . . The first thing I knew this man took me and says, 'Are you hurt?'"

She inquired who he was. He said, "It is Mr. Buck, the grocery-man down here." On cross-examination, she testified that when she got to Twenty-second street and Wyandotte, she didn't see any barricades across the street, but she did not look for any. She did not see any lights there. She was just turning off of Twenty-second street when the watchman spoke to her. "He just rose up and spoke to me—"

"Q. What did he say to you? A. He says, 'Lady don't go out in the street, stay on the sidewalk.'

"Q. What else did he say? A. Not another word; if he did, I failed to hear it."

Mr. Buck was a witness for the plaintiff and testified that he saw Mrs. Conley when she fell. "I was on my front porch. The place where she fell was directly in front of my porch." He saw her coming down the street, walking moderately fast. "As she got to

the corner of my ground next to the alley, she turned out to the south into the street and fell. At the time Mrs. Conley fell there were no obstructions in the street, but in the parkway there were about 3, 4 or 5 inch and quarter pump pipes lying lengthwise of the parkway. There were no lights or signals around the piles of pipe. The pile was about two and a half inches from the ground. They were laying so that a couple of them were on top of the others. I went down to where Mrs. Conley was. She was lying with her face and shoulders and the most of her across the curbing into the street. Her feet were on top of the pipe or nearly so. I helped her up. There had been one pipe lying along there prior to that day. It had been there three days I think. There was a watchman there on the street. The paving on Wyandotte had been completed clear to Twenty-second street before the night of the injury. The street was barricaded at the east end. There was a temporary barricade in the way. . . . I rather think there was one light or something like that there. Danger signals were put up on Twenty-first street; not clear across the street. I cannot say whether there were danger signals or not. On the night of the injury . . . everything had been moved away from there except the pump pipes."

Much space is devoted in the briefs of both parties to a discussion of whether plaintiff was guilty of contributory negligence. In our opinion, the important question is whether any negligence on the part of the city or the contractor was established. The negligence charged in the petition is that defendants permitted portions of the street ordinarily used for travel to be obstructed by certain water pipes without warning the traveling public of the presence of the obstruction by placing lights or other signals thereon or by warning the plaintiff of the presence of such obstruction. After referring to the fact that plaintiff, who testified several times, was not able to tell definitely where she fell except that it was near the alley, counsel say in their brief:

"But we have the uncontradicted testimony of Mr. Buck, who picked her up, and the admitted testimony of Mr. Matoon, defendants' own witness, as to exactly where she fell. Their own Mr. Matoon says she fell at a point about twenty feet before she ever arrived at the alley."

Again counsel say that when she got within about twenty feet of the alley she then started to go out in the street itself as instructed by the watchman and stubbed her toe on an iron pipe or pipes that were lying in the parking.

7—110 Kan.

To begin with, the city was in the exercise of its rights in improving the street and having the work done by the construction company. Both the city and the construction company owed to the public the duty to take reasonable precautions to warn pedestrians of dangers in the street. There were barriers across Wyandotte street at Twenty-first and Twenty-second streets. Where plaintiff entered upon Wyandotte street the defendants had placed a watchman to warn night travelers what part of the street was safe to use. The plaintiff's testimony to the effect that when she started to walk down Wyandotte street, the watchman rose up and said, "Don't go out on that street, stay on the sidewalk until you get further down by the crossing, then you can go out," and that he told her not to go out in the street but to stay on the sidewalk, established the absence of any negligence on the part of the defendants. It was not required of the defendants that the watchman should call her specific attention to obstructions lying on the parking since he had instructed her to stay on the sidewalk until she got down to the alley. It does not help plaintiff's case to argue that she was following the instructions of the watchman. She gives her own reasons for avoiding the alley, and disregarding the warning, and it is conceded that she turned across the parking at a point twenty feet before reaching the alley, in order to get into the street, and that she fell over the iron pipes lying lengthwise on the park strip.

It has been held that an instruction which limits the city to the use of certain methods of precaution is misleading and erroneous for the reason that the city is required to use only such means as are reasonably sufficient to warn pedestrians of the dangerous condition of the street. (*Gatewood v. City of Frankfort,* 170 Ky. 292.) The test is whether the means employed are reasonably sufficient for the purpose intended. Under particular facts the sufficiency is often a question for the jury. (6 McQuillin on Municipal Corporations, § 2804.)

While it has been said that "cases are rare in which the court can say as a matter of law that due care has, or has not, been exercised" upon the part of a city in keeping its streets in a reasonably safe condition for public travel (*Holitza v. Kansas City,* 68 Kan. 157, 159, 160, 74 Pac. 594), we have no hesitation in the present case in declaring as a matter of law that the plaintiff's testimony established the fact that the defendants used due care by warning the

plaintiff to keep upon the sidewalk and not go into the street until she reached the alley, or crossing.

There have already been three trials of the case. In each of the first two the jurors were unable to agree upon a verdict. There is no ground for dispute over the controlling facts. Plaintiff has told her story and it is apparent that the litigation should end.

The judgment is reversed and the cause is remanded with directions to render judgment for defendants.