## Myers v. City of Louisville et al.

(Decided May 17, 1938.)

(As Corrected on Denial of Rehearing Oct. 21, 1938.)

ARTHUR W. GRAFTON for appellant.

GAVIN H. COCHRAN for appellee City of Louisville.

MORTIMER VISER and DAVIS, BOEHL, VISER & MARCUS for appellee Breslin Const. Co.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

This is an action of Robert Myers against the City of Louisville and the Breslin Construction Company seeking damages for injuries to the mid-dorsal vertebra of his back, received by him in falling into a hole in McCready avenue, a street of the city, which was being constructed and paved by the Breslin Construction Company. At the close of the testimony of Myers, the court directed a verdict to be returned for appellees. Myers appeals.

There is very little controversy or dispute concerning the facts in the case. Some months before the 20th day of March, 1936, when the accident and injury complained of by Robert Myers occurred, the Breslin Construction Company, by authority that it had from the City of Louisville, was engaged in constructing and pav-

ing McCready avenue from the Lexington Road to Frankfort avenue. It is admitted that the construction company was authorized by an ordinance of the city to do this work and that the contract between the city and the construction company was authorized by ordinance. The work of construction was done under the ordinance and contract providing for the plans and specifications prepared by the city. The contract for the construction work included also a small portion of Ingle avenue, an intersecting street with McCready avenue. This grading required cutting down into the street from the existing grade which necessarily made the streets under construction unfit and dangerous for public use; so the street had been closed and barricades put up notifying traveling public that it was in process of construction and not suitable for use.

The accident occurred after midnight on Sunday, March 20, 1936. Myers, in company with a young lady whom he was courting and later married, returned to her home from a picture show in the city about 11:30 o'clock of that night and, by reason of the barricades and closed streets, parked his automobile that he had used in conveying the young lady to and from the picture show, somewhere on Ingle avenue, and then he and the young lady walked from that point to her home.

His version of what he did and how the accident happened is in his own language as follows:

"We had been to a picture show. Probably eleven-thirty we came down this path (on south side of Ingle Avenue); and we passed this barricade here (On Ingle Avenue by catch-basin excavation). I saw this barricade, and this one here (on Ingle Avenue around hole), and we came down here (by excavation), and this street here was cut (McCready)—excavated down, I guess three feet from the top where the cinder path led; and you could not get off the street in here (at path on southeast corner of Ingle and McCready) because they had it cut off this way, and this cinder path angled across the corner of the curb there. * * *

"We came down this embankment here. There is a street signpost here, and we came down on this side of the post (indicating), and then across the cinder path in this direction (west); and right here

(end of cinder path across McCready at intersection with west curbline) they had dug out a couple of steps in the mud bank. And we went on up to the house that way (on path west of curbline on west side of McCready Avenue to No. 214). And when I came back I walked the same path I had walked before (indicating on west side of McCready Avenue), and down this path across here (across McCready Avenue); and all at once I was in the hole.''

From his testimony he remained with the young lady at her home until about 1 o'clock; then, upon the same path in crossing the street when she was with him, he used on his way to his parked car. He stated in other parts of his testimony that the electric light at the intersection of Ingle and McCready avenues was in operation; that the light was upon the top of a pole at least 25 feet high and about 35 feet from a pile of dirt that was thrown out of the hole that had been dug, into which he fell; that in crossing McCready avenue on this cinder path, that was very narrow, he and the young lady had to be careful to walk upon it; that a portion of McCready avenue was excavated down 3 or 4 feet and to get into the sidewalk or cinder path he had to step down to reach Ingle avenue in order to go to the excavated portion of McCready avenue; that he knew that McCready avenue was blocked and closed against traffic, and that it had been in that condition and under construction for some time; that when he and the young lady passed going to her home he not only saw the barricades, but also saw what was denominated a "wooden horse" placed east and west just south of the hole in Ingle avenue; that as he came by the hole the first time with the young lady there was a large red road roller across the street; that it had a red light upon it; that near the hole was a large pile of dirt and on this dirt was a red light; that the pile of dirt was, as he stated upon one occasion 4 feet high and on another about 10 feet high.

Appellant's counsel concedes that when a street is being constructed and paved as this one that the municipality had a legal right to close it for repairs and, if properly barricaded or has something to indicate that it is closed, there is no liability for one using the street. He grounds his cause of action upon the contention that

the cinder path on which Myers traveled that night had been built by the Breslin Construction Company for the use of pedestrians in passing over and across the avenue; and he makes the argument that Frank Breslin in his testimony, taken as upon cross-examination, as provided by subsection 8, of section 606, Civil Code of Practice, stated that his company constructed the path for the use of any persons that might see proper to use it; that, having constructed it for that purpose, it was negligence upon the part of the Breslin Construction Company to leave the hole open and unguarded and without a notice to pedestrians who might use it.

Counsel plants appellant's right of recovery upon that contention alone. He concedes the City of Louisville the absolute right to entirely close the streets in evidence, when being constructed and when repairs are being made; that the contractor making the repairs is under no duty to protect the public from injuries in the use of the street except to barricade them in such a way as to indicate to the ordinarily prudent person that the street is closed. He contends that the streets under repair were not entirely closed nor did the contractor forbid or object to the use of any part of the street, but on the contrary made a cinder path across the street for the use of pedestrians who wished to pass over and across the street. However, it is admitted that proper warnings and barricades were placed upon the streets under repair indicating that they were closed from traffic and were under construction and blocked. To sustain that position, counsel asserts that Myers and Frank Breslin, president of the Breslin Construction Company, testified that the cinders had been laid across the street by the company for the use of pedestrians. After a careful and close examination of the transcript of testimony, the court has been unable to find such evidence of Breslin, the president of the construction company, or by any other witness. Breslin, the president of the construction company, in giving his evidence as upon cross-examination for appellant, did state in answer to the following questions:

"Q. Did your company put down the cinder path they talk about? A. Yes sir.

"Q. Was McCready Avenue closed for travel and pedestrians during the operation of this work? A. Yes sir.

"Q. As well as the intersection of Ingle, there where the hole were dug, about which we have had testimony? A. It was all closed."

The above does not sustain appellant's contention.

Appellant, Myers, was not an invitee on the occasion when he used the cinder path and received his alleged injuries. There is no proof that the cinder path was made by the construction company for the use of pedestrians or for the use of the public in general. It is in evidence that the construction company put down the cinders along the path and same were used occasionally by the citizens of the community in passing over the street that was being repaired. In doing so, they did it at their own risk.

In any event, the use of the cinder path by pedestrians, including the appellant, did not render the construction company liable for injury to the person using it. There was no duty imposed upon the construction company to object to the user, because the street being closed for construction, and at the time in process of construction, notice of that fact being evident, the use of same was at the risk of all pedestrians.

The object of putting the cinders on the path was really for the use and benefit of the construction company and its laborers in the repairing and construction of the street. When Myers used the cinder path on the night when he was injured, it was with the full knowledge on his part that the street was closed for repairs and at the time was being repaired. With the obstruction admitted, and the red lights plainly to be seen, no prudent person would reasonably pass along and over this cinder path and use ordinary care without observing the danger, which was necessarily obvious and plainly to be seen. The red light upon the pile of dirt near the hole and the red road roller with a red light upon it, near to the place where the accident occurred, were danger signs.

Myers, only a few hours before had passed along the cinder path without danger, and as he did so he saw the red light, or could have seen, had he looked, the large pile of dirt and the road roller with a red light upon it, and, no doubt, did see it, because in making the first trip over the cinder path, there was no accident, although the hole in the earth was there. On his return,

possibly with his mind upon the young lady to whom he was soon thereafter married, with his head down, possibly, in deep, silent and solemn contemplation of the bright future just before him, he approached the red light upon the pile of dirt that was at least from 4 to 8 feet high, without thinking of the dangerous surroundings. It is hardly reasonable that a prudent person under such surroundings would have walked into a hole that was 8 feet in diameter, as shown by the proof, unless it was the result of his own carelessness in failing to look where he was stepping or where he was going.

Under the pleadings, appellees rely upon the defense that appellant was negligent, himself, or at least guilty of such contributory negligence, that his own contributory negligence was the proximate cause of the injury.

The court has reached the conclusion that the cause of Myers' injuries was the result of his own negligence. Myers, with full knowledge of the fact that the street had been closed, and of the repairing and grading of the street, knew that changes daily would take place in its construction by the contractor; that the contractor necessarily was bound to create a dangerous condition for pedestrians in using the cinder path; and he should have taken notice of that fact and prudently and carefully avoided the danger that would certainly accompany that character of work.

Appellees rely in the main upon the following citations, namely: Barrickman v. City of Louisville, 159 Ky. 431, 167 S. W. 161; City of Lawrenceburg v. Lay, 149 Ky. 490, 149 S. W. 862, 42 L. R. A., N. S., 480, Ann. Cas. 1914A, 1194; Knepfle v. Lauffer, 182 Ky. 514, 206 S. W. 788; Elam v. City of Mt. Sterling, 132 Ky. 657, 117 S. W. 250, 20 L. R. A., N. S., 512. These cases all approve and endorse the established rule and principle that it is the duty of a municipality to keep its streets in a reasonably safe condition for public travel, and in doing so they are authorized to temporarily close them to public travel and when closed, if due and timely notice is given to the public, there can be no recovery from injuries resulting from their use. The contractor with the city in making the repairs is entitled to the application of this same rule or principle of law, under its contract with the city in repairing and constructing the streets.

Applying to the facts developed in this case, that wholesome and sound principle, we cannot reach any other conclusion than that the court was right at the conclusion of appellant's testimony in mandatorily instructing the jury to find for the defendants.

Wherefore, the judgment is affirmed.