Hart, J.
 

 The legal questions to be answered in this case are: (1) Did the city of Youngstown owe the plaintiff any duty to provide him a safe place to work or a safe means to get to and from his work? (2) Did the excavation in Front street constitute a nuisance for which the city was liable? (3) Did the plaintiff assume the risk or was he guilty of negligence which was the proximate cause of his injury? These questions will be dealt with in order.
 

 The city was engaged in the construction of a high-level bridge which was to carry traffic from and on a level with Front street across the tracks of the Pennsylvania Railroad Company and the Mahoning river to the west or south side of Youngstown. This required abutments to be constructed some 25 or 30 feet high against the bank on the top of which Front street is located. Naturally, this required not only the construction of high abutments but the excavation of the earth behind the abutments until they were constructed and made secure, so that the earth could be filled in back of them. The construction also called for a steel
 
 *93
 
 bridge to be erected on top of these abutments on a high level across the valley spanned by the bridge.
 

 The very nature of the undertaking required what was done to be done, and it necessarily exposed the plaintiff and all the employees of the several contractors working on the various parts of the construction to the hazards naturally incident to this type of construction. The area in question, including that portion of the street covered by the construction, was fenced off at time of plaintiff’s accident, but he claims that the city owed him the duty to provide him a safe place to work and to abate any nuisance in such area which rendered it dangerous.
 

 The construction of the abutments and the excavation behind the abutments were entirely under the control and management of The Charles Shutrump & Sons Company, an independent contractor. The erection of the steel structure was entirely under the control of the Bethlehem Steel Corporation, the employer of the plaintiff. It alone was responsible for the methods of work employed. It alone made it necessary, if it was necessary at all, for the plaintiff to work along the top of the abutment from which he fell.
 

 The city, on the other hand, had no control over the plaintiff nor had it anything whatsoever to do with providing his place to work. It did not create or permit to exist any hidden dangers or dangers with which the workmen were unaware. The record does not show that it had any notice or knowledge that plaintiff’s work took him to the top of the abutment or required him to walk along it. The city had no opportunity or • right to adopt any plan as to how the work should be done or make rules governing the safety of the employees of its independent contractors. This, as a matter of law, was enjoined upon such contractors See Section 871-15, General Code.
 

 It is true the owner or occupant of premises must use ordinary care toward an invitee to keep such prem
 
 *94
 
 ises free from clangers which are not discernible by a. prudent person using ordinary care under the circumstances. Where the premises on which construction work is to be performed by a contractor remain under the control of the principal employer while the-work is in the course of performance, a servant of the-contractor is an invitee and as such is entitled to recover from the principal employer for any injury which-he may sustain by reason of the abnormally dangerous-condition of the premises, only if the principal employer has, and the servant has not, actual or cons tractive knowledge of the existence of such condition..
 
 Indermaur
 
 v.
 
 Dames,
 
 L. R., 1 C. P., 274, 19 English Ruling Cases, 64;
 
 United States Cast Iron Pipe & Foundry Co.
 
 v.
 
 Fuller,
 
 212 Ala., 177, 102 So., 25, quoting statement of Cooley, J., in
 
 Powers
 
 v.
 
 Harlow,
 
 53 Mich., 507, 19 N. W., 257, 51 Am. Rep., 154;
 
 Douglass v. Peck &
 
 L.
 
 Co.,
 
 89 Conn., 622, 95 A., 22;
 
 Samuelson, Admx.,
 
 v.
 
 Cleveland, Iron Mining Co.,
 
 49 Mich., 164, 13 N. W., 499;
 
 Hoppe
 
 v.
 
 City of Winona,
 
 113 Minn., 252, 129 N. W., 577, 33 L. R. A. (N. S.), 449;
 
 Westover
 
 v.
 
 Hoover,
 
 88 Neb., 201, 129 N. W., 285, 19 A. L. R., 215;
 
 Warner v. Synnes & West Oregon Lumber Co.,
 
 114 Ore., 451, 230 P., 362, 44 A. L. R., 904, and annotations page 1004;
 
 Calvert
 
 v.
 
 Springfield Electric Light & Power Co.,
 
 231 Ill., 290, 83 N. E., 184, 14 L. R. A. (N. S.), 782.
 

 The measure of this duty is well expressed by the Supreme Court of Illinois in the case of
 
 Calvert
 
 v.
 
 Springfield Electric Light & Power Co., supra,
 
 as follows:
 

 “The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by- the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invi
 
 *95
 
 tation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises.” Cited and approved in
 
 Mason Tire & Rubber Co.
 
 v.
 
 Lansinger,
 
 15 Ohio App., 310, 318, affirmed
 
 Mason Tire & Rubber Co.
 
 v.
 
 Lansinger,
 
 108 Ohio St., 377, 140 N. E., 770; 29 Ohio Jurisprudence, 466, Section 61. See, also,
 
 Wells
 
 v.
 
 Duncan Coal Co.,
 
 157 Ky., 196, 162 S. W., 821. But if the statical condition of the premises is such that the dangers are easily perceived, no liability can arise.
 
 Hannan, Admr.,
 
 v.
 
 Ehrlich,
 
 102 Ohio St, 176, 131 N. E., 504;
 
 Railroad Co.
 
 v.
 
 Harvey,
 
 77 Ohio St., 235, 83 N. E., 66.
 

 Since in this case the plaintiff possessed a full realization of the dangers surrounding his place of employment, which dangers, if any, were created as a result of the prosecution of the work by independent contractors, one of whom was plaintiff’s employer, and since the city of Youngstown bad no right or authority to direct the methods by which the work was to be performed, the city violated no duty to the plaintiff in that respect and cannot be held liable on the theory that it must provide him a safe place to work.
 

 The second question in this case is: Did the' barricaded excavation in Front street made pursuant to the construction of a bridge on an intersecting street constitute a nuisance in the street for which the city was liable?
 

 Streets and highways are public and governmental instrumentalities, maintained for the use of all citizens of the state. Municipalities, while engaged in the improvement of such streets including the erection of bridges thereon, are engaged in the performance of a governmental function.
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210;
 
 City of Dayton
 
 v.
 
 Glaser,
 
 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N.
 
 *96
 
 S.), 916;
 
 City of Akron
 
 v.
 
 Butler,
 
 108 Ohio St., 122, 140 N. E., 324. This is because a municipality, in the performance of such duties, is acting as an arm of the-state.
 

 Accordingly, the rule almost universally recognized is that in the absence of statutory provision to the contrary there can be no recovery against a municipal corporation occasioned by its negligence or nonfeasancein the exercise of functions essentially governmental in character.
 
 City of Akron
 
 v.
 
 Butler, supra; City of Wooster
 
 v.
 
 Arbenz, supra; City of Portsmouth
 
 v.
 
 Mitchell Mfg. Co.,
 
 113 Ohio St., 250, 148 N. E., 846, 43 A. L. R., 961;
 
 Selden
 
 v.
 
 City of Cuyahoga Falls,
 
 132 Ohio St., 223, 225, 6 N. E. (2d), 976;
 
 Aldrich
 
 v.
 
 City of Youngstown,
 
 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497. This includes the function of building streets, or bridges within streets, as was being done in this case.
 
 City of Wooster
 
 v.
 
 Arbenz, supra.
 

 By the enactment of Section 3714, General Code, a statutory duty has been enjoined upon municipalities of this state to keep streets and alleys open, in repair and free from nuisance.
 

 A municipality cannot claim immunity from liability while engaged in the construction of streets and bridges if, at the same time, it keeps them open for public travel. If, while such work is going on, the street is-left open for travel and a traveler is injured because of an excavation or nuisance permitted to exist in the street, the municipality will be liable under the statute.
 
 Circleville
 
 v.
 
 Neuding,
 
 41 Ohio St., 465. On the other hand, a municipality may, while constructing or repairing its streets, close them to public travel and when closed there can be no recovery for injuries resulting from their use.
 
 Myers
 
 v.
 
 City of Louisville,
 
 274 Ky., 764, 120 S. W. (2d), 221, 119 A. L. R., 837.
 

 Since the statute is in derogation of the common-law rule of non-liability and therefore subject to strict construction, its scope and application have been lmi
 
 *97
 
 ited to conditions affecting the physical obstruction or hindrance to traffic. Therefore, the liability of the municipality for defective streets arises only in favor of persons who were injured thereby while using the street as a means of travel.
 

 At the time of plaintiff’s injury the street in question was not open for travel and it was not being used by the plaintiff as a means of travel. Consequently, the plaintiff is not entitled to invoke the rights or remedies afforded by the statute. As to him, the city is immune from liability.
 

 There is still another reason why there can be no recovery in this action. Under the undisputed evidence in this case there was a clear assumption of risk on the part of the plaintiff.
 

 The top of the wall upon which plaintiff attempted to -walk in the course of his employment in the nighttime was two feet, nine inches wide. Prom the center of the top of this wall there protruded upward from its upper surface steel support rods, some straight up to a height of three or four inches from the top of the wall, others bent and about 10 inches high from the top of the wall. These rods were about 10 inches apart in the center line of the wall. In walking along the top of the wall, the plaintiff was' obliged to walk astride this line of steel rods. The top of the wall was about 25 or 30 feet above the ground level at the base of the wall.
 

 The plaintiff testified as to his walking on this wall as follows:
 

 “* * * I often, different times when I was going across there, and all of them big boulders in the bottom there, and plank down there, sticking up from the first foundation of that wall, and I often thought, gee, a fellow goes down there just too bad for him. * * *
 

 “Q. Every time you walked over that wall, Mr. Davis, you appreciated the danger of it, didn’t you? A. Yes, sir.
 

 
 *98
 
 “Q. You knew it was dangerous to do it, didn’t you? A. Yes, sir.”
 

 In an action by a contractor’s servant against a contractee for injuries resulting to such servant because of the condition of the premises of the contractee, it is a valid defense that the conditions by which the injury in question was occasioned were known to and appreciated by the plaintiff and that as a consequence he is chargeable with an implied assumption of the risks arising from those conditions.
 
 Woodley
 
 v.
 
 Metropolitan Dist. Ry. Co.,
 
 L. R., 2 Exch. Div., 384;
 
 Hotchkin
 
 v.
 
 Erdich,
 
 214 Pa., 460, 63 A., 1035, 10 L. R. A. (N. S.), 506; 44 A. L. R., 1122, annotation; 4 Restatement of Torts, 491, Section 893.
 

 Even though the plaintiff should be regarded as a pedestrian on the street, which he was not, he could not recover because one who voluntarily goes upon a street or sidewalk which he knows to be dangerous, is usually held to have assumed the risk of injury, or to have been guilty of such contributory negligence as to preclude a recovery in case of injury. 28 Ohio Jurisprudence, 1002, Section 623;
 
 Schaefler
 
 v.
 
 City of Sandusky,
 
 33 Ohio St., 246;
 
 Village of Conneaut
 
 v.
 
 Naef,
 
 54 Ohio St., 529, 44 N. E., 236;
 
 City of Akron
 
 v.
 
 Keister,
 
 6 C. C. (N. S.), 603, affirmed
 
 Keister
 
 v.
 
 City of Akron,
 
 75 Ohio St., 596, 80 N. E., 1128;
 
 City of Cleveland
 
 v.
 
 Stofer,
 
 52 Ohio St., 684, 44 N. E., 1133, 1147;
 
 Highway Construction Co.
 
 v.
 
 Sorna,
 
 122 Ohio St., 258, 171 N. E., 312;
 
 City of Norwalk
 
 v.
 
 Tuttle,
 
 73 Ohio St., 242, 76 N. E., 617.
 

 In cases where an injury is received by one attempting to negotiate his way through a street closed to public travel, recovery has been denied, on the ground that the defendant had discharged its full duty in barricading the street, or that the plaintiff had assumed the risk, or was guilty of contributory negligence.
 
 Conley
 
 v.
 
 Kansas City,
 
 110 Kan., 95, 202 P., 607;
 
 Martin
 
 v.
 
 Chelsea,
 
 175 Mass., 516, 56 N. E., 703;
 
 Hamilton v. City of Detroit,
 
 105 Mich., 514, 63 N. W., 511;
 
 Kane
 
 v.
 
 *99
 

 City of Yonkers,
 
 169 N. Y., 392, 62 N. E., 428;
 
 Johnson
 
 v
 
 City of New York,
 
 208 N. Y., 77, 101 N. E., 691, 46 L. R. A. (N. S.), 462;
 
 Hunter
 
 v.
 
 City of Montesane,
 
 60 Wash., 489, 111 P., 571;
 
 Myers
 
 v.
 
 City of Louisville, supra.
 

 In the case of
 
 Kane
 
 v.
 
 City of Yonkers,
 
 above cited, a bridge over a city street, constituting the overhead crossing of a railroad, had been dismantled. The planking had been removed, leaving only the iron framework and girders in place. The city had barricaded the bridge by gates and timbers extending entirely across the end thereof. It was held that the city was not liable to one who in the nighttime forced an opening through the gates and fell to the street below.
 

 The plaintiff in this case took his chances in going upon this wall and his injuries were directly due to the risk and his own want of care in the premises.
 

 The judgments of the Court of Appeals and the Common Pleas Court are reversed and final judgment s rendered for the defendant, the city of Youngstown.
 

 Judgment reversed.
 

 Weygandt, C. J., Turner, Matthias and Zimmerman, JJ., concur.
 

 Williams, J., concurs in the judgment.
 

 Bettman, J., not participating.