Matthias, J.
The plaintiff has assigned numerous errors which he claims were prejudicial to him in the trial of this cause. The admission of certain evidence and instructions to the jury on assumption of risk and contributory negligence are the principal grounds of complaint. The contention is made that the plaintiff was a so-called “frequenter,” that the doctrine of assumption of risk cannot be applied in his action against an independent contractor, and that in such relationship the defense of contributory negligence is unavailable. Counsel go further and urge the application of the comparative-negligence rule.
The term, “frequenter,” is defined in Section 871-13, General Code, as including “every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser.”
The plaintiff requested the court to instruct the jury, before argument, on the law relating to frequenters and submitted 17 special charges all which the court gave over the objection of the defendant. In addition to these special charges, the court in its general charge referred to the instructions before argument and charged the jury by reading to it Section 871-16, General Code. That section provides as follows:
“No employer shall require, permit or suffer any employee to go or be in .any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees or frequenters; and no such employer or other person *99 shall hereafter construct or occupy or maintain any place of employment that is not safe.”
There was no error prejudicial to the plaintiff in the submission by the trial court of the question of the relationship between the plaintiff and the defendant company.
It is urged, however, that the doctrine of assumption of risk cannot apply in this action by reason of this relationship.- That contention is based on the following statement found in 26 Ohio Jurisprudence, 597, Section 572:
“The doctrine of assumption of risk does not apply as between an injured employee and a third person whose negligence proximately contributed to the injury, or between the employee of an independent contractor and the principal contractor.”
This statement is incorrect as is disclosed by later annotations in Ohio Jurisprudence. The case of Davis v. Charles Shutrump & Sons Co., 140 Ohio St., 89, 42 N. E. (2d), 663, has settled this question in Ohio. Paragraph four of the syllabus of that case provides as follows:
“In an action by a contractor’s servant against a contractee for injuries resulting to such servant because of the condition of the premises of the contractee, it is a valid defense that the conditions by which the injury in question was occasioned were known to and appreciated by the plaintiff and that as a consequence he is chargeable with an implied assumption of the risks arising from those conditions.”
See, also, Masters v. New York Central Rd. Co., 147 Ohio St., 293, 70 N. E. (2d), 898.
By provisions of Section 6245, General Code, the defense of assumption of risk is not applicable in a suit by an employee against his employer, but there is no statutory provision taking away that defense on behalf of a defendant against one who is not his em *100 ployee. The defenses of contributory negligence and assumption of risk were taken away from employers who were in turn given the benefit of the Workmen’s Compensation Act. Here it is sought to take from this defendant the defense of assumption of risk to whom nothing is given in return.
The doctrine of assumption of risk is well established in this state by many decisions of this court. Numerous cases have held that, under ordinary circumstances, a person fully aware of a danger assumes the risk incident to such danger. See 29 Ohio Jurisprudence, 536, Section 91, where numerous cases are cited including Cincinnati, Lawrenceburg & Aurora Electric St. Rd. Co. v. Lohe, Admr., 68 Ohio St., 101, 67 N. E., 161, 67 L. R. A., 637; Harmony Realty Co. v. Underwood, 118 Ohio St., 576, 161 N. E., 924.
There is evidence in the record that the plaintiff was injured as a result of his descending the outside of a wooden form while it was still in the process of construction, which fact was known to him, and that other means was provided for his descent from the top of the form, which might readily have been used by him.
The general rule applicable has been well stated to be that when there are two ways of accomplishing a thing which needs to be done, the one a safe way and the other unsafe, he who undertakes to perform the same must choose the safe way or choose the unsafe at his peril.
In the instant case the trial court correctly charged the jury relative to assumption of risk in the following concise statement:
“In other words, a person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and *101 thereby relieves such other of legal responsibility for an injury resulting from such exposure.”
The charge to the jury by the court was in accord with paragraph four of the syllabus in the Masters case, supra, and properly stated the law applicable to this case.
It is urged also that it was improper to charge on contributory negligence for the reason that the rule of comparative negligence obtains.
The doctrine of comparative negligence has no application whatever in Ohio except in a personal injury action by an employee against his employer. Section 6245-1, General Code, provides, in part, as follows:
‘ ‘ That in all such actions hereafter brought, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence is slight and the negligence of the employer is gross in comparison. But the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.”
It is perfectly clear from the provisions of Section 6242, General Code, which was incorporated in the same act as was Section 6245-1, General Code, that the term, ‘ ‘ such actions, ’ ’ as used in the latter section, refers to “actions brought to recover from an employer for personal injuries suffered by Ms employee * * * while in the employ of such employer, arising from the negligence of stick employer.” (Emphasis supplied.)
It follows that the test applicable in this case is “whether the negligence of the plaintiff, whatever it be, caused or directly contributed to cause the accident and injury,” as “negligence on the part of the plaintiff, if it concurs with the negligence of the defendant to directly cause the accident and consequent injury, will defeat recovery bv the plaintiff.” Bartson v. Craig, 121 Ohio St., 37l, 169 N. E., 291.
*102 In our opinion, therefore, no prejudicial error was committed by the trial court in either of the respects referred to.
The plaintiff insists, however, that the action of the court in numerous instances in admitting certain testimony and failing to limit the cross-examination of the plaintiff to relevant matters constituted prejudicial error requiring reversal of the judgment. One of the issues involved the extent of injuries suffered by the plaintiff and evidence adduced on his behalf indicated that he may have incurred certain neurological or psychiatric injury as the result of the accident. This evidence was to the effect that there had been a change of his disposition resulting from the injury, he having become nervous, cross and disagreeable, whereas, previous to the accident, he had been good humored and normal in his behavior.
Counsel for the defendant in cross-examination of the plaintiff interrogated him as to the contents of two divorce petitions filed by his wife in which allegations were made of his bad temperament and rude conduct towards her. The first of these petitions was in 1912. Defendant filed an answer thereto. A trial resulted in a divorce to his wife with a concurrent property settlement. The second case was instituted by his wife (she having remarried him subsequent to the divorce) in 1918, after his accident. In that action defendant filed no answer and without contest a divorce was granted. That petition also contained allegations of his bad conduct toward his wife.
For the alleged purpose of impeaching the testimony of the plaintiff, counsel for the defendant cross-examined him at great length on each petition. The first petition was not even offered in evidence and would have been inadmissible by reason of the fact that an answer was filed thereto. Certainly, it is at least *103 quite unusual to retry a divorce case in a subsequent negligence action.
There was also extensive and intensive cross-examination of the defendant relating to the second divorce action, which was permitted by the trial court on the announced theory that the defendant (not having filed an answer thereto) by his silence admitted the truth of the statements in the petition. The petition in the second divorce case was tendered as an exhibit and admitted by the court, all without any evidence that the wife was not available to testify in person.
The admission of this exhibit and the cross-examination on both divorce’ petitions were erroneous for the reason that such matters were wholly irrelevant and extremely prejudicial to the plaintiff. The prejudicial effect of the admission of such evidence was greatly accentuated by the argument of counsel for the defendant to which we shall hereinafter refer. The following is an excerpt from the record disclosing a sample of the argumentative questions propounded to the plaintiff:
“Q. Mr. Plas, will you pay close attention to the question so you know what it is? My question is this: It is true that your wife filed a divorce petition and swore to that petition and that you were served a copy of that petition, which petition was filed on January 13, 1942, in the Court of Common Pleas of Lorain County, Ohio, and didn’t that petition contain this language: That you were guilty of extreme cruelty in that you had beaten her, struck her, and abused her, had called her vile and indecent names and had struck your child and her child in unreasoning rages and fury causing her to be in mortal fear of you, and had threatened the life of your wife by stating that you would kill her, and that on the evening of January 11, 1942, attempted to kill her?”
*104 There was further cross-examination relating to the second divorce action, which is hereinafter set forth.
In his argument to the jury one of counsel for the defendant, in his zeal for his client, disregarded his duty as an officer of the court. To put it mildly, the following statement by him to the jury, relative to no issue in the case, was far from being conducive to an impartial consideration and verdict on any issue. lie said:
“But here we have a man with all that sweet disposition whose wife comes along and says in her petition for divorce that he was drunk, that he was running out with other women, that he had an ungovernable temper, and he struck her and his own daughter, and said he was going to kill her.. Now, all this happened before 1946. What does he do with such a petition of divorce?
“He said, ‘My wife came home and told me the lawyers made all that up.’
“Lawyers don’t do that. Lawyers put in the pleadings what the clients tell them. How would lawyers know that he was running with other women, that he was drunk, that he had this ungovernable temper, that he unreasonably struck her and struck that child? No, that doesn’t go. I don’t think Mr. Levin agrees with that. I think he got embarrassed when his client said that that was all the lawyers’ doing.
“What does the father say? Because she liked to live in the city and he liked to live on the farm. You can swallow that, but I don’t believe you will swallow that. Then they went back to live together again. They were remarried.
“A man tells a woman, ‘I know I have been all that. I am going to be a good boy.’
“And the sweet thing- is always willing to forgive him. There is no question about that. You see it all the time.
*105 “You say, ‘Why does that woman take that low down skunk back again?’
“I don’t know, but she did. She took him back, and it was the same thing all over again. That sweet disposition didn’t stay. He had just what he had in 1928 or whenever they were married. He had that same disposition.”
It was the duty of the trial court to keep the cross-examination of the plaintiff within reasonable bounds, and, when the cross-examination took such a wide range that its unmistakable tendency was to so arouse prejudice against the plaintiff as to cause an unfair trial and miscarriage of justice, it was the further duty of the court to interfere when objection was made, admonish counsel and properly instruct the jury relative thereto. See 42 Ohio Jurisprudence, 335, Section 333.
Constantly repeated objections of plaintiff’s counsel to the admission of such evidence and to such cross-examination, and later to the argument predicated thereon, were without exception overruled by the trial court. It was the clear duty of the court to sustain such objections, to admonish offending counsel and properly instruct the jury to disregard the improper statements.
Indeed the court should have done so without the necessity of the constant and repeated objection of counsel. The action of the court in consistently overruling those objections could well be regarded as approval and encouragement to offending counsel!
It is urged by the defendant, however, that the evidence in question went only to the issue of damages and that since the jury may have found either that the defendant was not negligent or that the plaintiff assumed the risk or was contributorily negligent this case required the application of the so-called “two- *106 issue rule.” Briefly stated that rule is that where the jury returns a general verdict in a case involving two or more issues, a finding upon any one of which in favor of the successful party would entitle him to judgment, if the record does not disclose affirmatively by answers to interrogatories or otherwise upon which issue such verdict was based, the judgment will not be reversed if no error appears as to any one or more of them although there may be error as to other issues.
Such rule, however, does not apply where the errors committed are of such a nature that they affect all isswes involved. An example of such a situation as is presented here is found in the case of Acrey v. Bauman, Jr., 134 Ohio St., 449, 17 N. E. (2d), 755, the syllabus of which is as follows:
“The two-issue rule does not apply where testimony is admitted as to one issue, which has the natural tendency of engendering racial prejudice against the losing party as to all issues, and the presumption will be indulged that such testimony influenced the general verdict of the jury, and the judgment rendered thereon will be reversed. ’ ’
See, also, Cowley v. Bolander, 120 Ohio St., 553, 166 N. E., 677.
In the instant case, as in the cases cited, the prejudicial effect of the denunciation of the plaintiff was sweeping and all pervasive, resulting in unmistakable prejudice to the entire case of the plaintiff and depriving him of a fair trial upon all issues involved in the case.
The judgment of the Court of Appeals is, accordingly, reversed,- and the cause is remanded to the Court of Common Pleas for a new trial.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taft and Hart, JJ., concur.