## GIRARD (city) et v SMREK

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 27, 1935

Russell G. Mock, Youngstown, for plaintiff in error.

W. L. Countryman, Youngstown, and Samuel S. Davidson, Youngstown, for defendant in error.

**OPINION**

By NICHOLS, J.

It is our duty first to determine whether the demurrer of defendants to the amended petition, on the grounds of misjoinder of actions and misjoinder of parties defendant, was properly overruled. To this end we quote the exact language of the pertinent portion of the amended petition. to-wit:

"Plaintiff further says that some time in September, 1930, a contract was entered into between the defendant, the city of Girard, and the defendant, John Hannon, doing business as aforesaid, whereby the defendant, John Hannon, did promise and agree to build, erect and construct for the city of Girard, certain main water line extensions in Randolph Avenue, Earl Avenue, Maple Avenue, Hazel Street, Trumbull Hill Road, Skoplee Avenue, Plymouth Avenue, Clearmont Street and other streets, and to furnish and set up all the pipe specials, valves, hydrants and other fixtures, etc., necessary and incidental to such contract.

Plaintiff further says that the defendants herein, during the months of September, October, November and December, 1930, did permit and cause a certain main water line extension to be constructed, erected and installed in Randolph Avenue at the place where it joins Trumbull Hill Road on the southerly side of said junction of Trumbull Hill Road and Randolph Avenue; that after such main water-line extension had so been installed by the defendants herein, a high hump of dirt was placed in, upon and along the course of said Randolph Avenue and across its intersection with Trumbull Hill Road, and was by these defendants allowed to remain in such a condition along the said street and across the said intersection, so that said mound of dirt thus left across the said intersection was rough, irregular and varying from one to two feet high, and was from three to five feet across; that the said hump or obstruction did then and there cause a hazardous and dangerous condition to exist and constituted a nuisance in the said public street; that the defendants did thus permit the said street to become, be and remain in a broken, out of repair, unsafe, dangerous, defective and hazardous condition; that said obstruction, nuisance and dangerous condition existing in and permitted by these defendants to remain in the said street constituted such dangerous and hazardous defect in and upon said street as was liable to cause those using the said street to stumble, fall or be otherwise injured, including those sliding down Trumbull Hill and across Randolph Avenue, that dangerous defect in the said street had existed in and upon the said street and cross-walk for a long

period of time prior to the date of the injuries hereinafter alleged and described, to-wit: December 28th, 1930, and of which these defendants knew, or in the exercise of ordinary care should have known; that there were no guards, railing, signs or other means of protection or warning erected or maintained by these defendants to advise or apprise pedestrians or children using the said street and cross-walk of the dangerous and hazardous condition and defect then and there existing. Plaintiff says that with a covering of snow on the ground, the extent and nature of the said defects was obscured to those unfamiliar with such conditions and the dangers thereof hidden; that the said defendants with knowledge thereof, as aforesaid, failed and neglected to remove the said rough and dangerous obstruction in the said street, although the said defendants had time to do so, had they exercised reasonable care in that regard."

It will be noted that this amended petition alleges, in substance, that both defendants created the nuisance, and that both defendants failed and neglected to remove the nuisance from the duly dedicated public street of the city of Girard, Ohio, of which both defendants had knowledge. or in the exercise of ordinary care should have known.

In an effort to point out to this court the correct rule to be applied in determining whether these defendants were properly joined in this action, counsel for the respective parties have presented to us able briefs, citing many authorities, which we have examined with great care, as well as many other authorities not cited, and we find that the correct rule is most succinctly stated by the Supreme Court of Ohio in its opinion in the case of The Village of Mineral City v Gilbow ef, 81 Oh St, 263. We quote from pages 272 and 273 of the above case as follows:

'Undoubtedly the rule is for separate acts of trespass separately done, or for (separate) positive acts negligently done, although a single injury is inflicted, the parties can not be jointly held liable to the party injured. If there is no concert of action—no common intent—there is no joint liability. But a different principle applies where the injury is the result of a neglect to perform a common duty resting upon two or more persons, although there may be no concert of action between them In such cases the party injured may have his election to sue all the parties owing the common duty, or each separately, treating the liability as joint or separate."

We have added into this quoted language the word "separate" in parenthesis for definiteness of expression only without changing the meaning of the language used by the Supreme Court. Now, applying this rule, we find alleged in the petition a failure of the common duty resting upon each defendant to remove the nuisance which is alleged to have been placed in the street by the defendants. That this common duty existed as against the city by reason of statute, and against the defendant, Hannon Contracting Company, by contract or otherwise, does not render the duty of each other than common.

We cite the recent case of Sparks v The Beacon Journal Publishing Company, 44 Oh Ap, 355 (14 Abs 348), and cases there cited.

The demurrer of the defendants to the amended petition of plaintiff was properly overruled. We deem it pertinent to remark that regardless of the duty which it is claimed rests upon the Hannon Contracting Company to remove the alleged nuisance by reason of the terms of the contract entered into by said company and the city of Girard, nevertheless, if Hannon Contracting Company created a nuisance in a public street of the city of Girard, it had the duty to remove or abate that nuisance or accept liability for its failure to abate the same.

The demurrer of the defendants to the petition having been properly overruled, we must next determine whether at the conclusion of the plaintiff's evidence, as well as at the conclusion of all the evidence in the case, the record discloses that the plaintiff had shown by a preponderance of the evidence that both of these defendants had failed to perform a common duty to remove the alleged nuisance in this public street. As part of plaintiff's evidence, the contract entered into between the city of Girard and Hannon Contracting Company for the installation of this water system was offered and properly admitted in evidence.

The contract between the city of Girard and Hannon Contracting Company provides that the latter "do and perform all the work and furnish all the materials which may be required, except as herein otherwise stated. in accordance with the plans and directions made and to be made as the work proceeds, and for the price as set forth in the proposal hereunto annexed, including damages, etc., as set forth in the specifications."

The contract further provides that

wherever the word "engineer" is used, it shall be understood to refer to the city engineer.

In the general stipulations which are a part of this contract it is provided, among other things, as follows:

**"The work shall be begun and carried on in such places and in such manner as the engineer shall direct.**

The contractor shall, on request of the engineer, dismiss from the work any employe who shall fail or refuse to do his work according to specifications.

Defective work shall be made good immediately whenever discovered.

The city reserves the right to make alterations in the work. If such alterations increase, diminish or omit work and materials, it is agreed that this contract shall not be vitiated thereby, nor constitute any claim for damages to the contractor, but he shall complete the work, whether it be more or less.

The contractor shall do work and furnish material not called for herein, provided the price for the same shall be first agreed between the parties hereto; but if such agreement cannot be made then the city shall have the right to do said work and furnish said material, and the contractor shall not interfere with the work.

The engineer shall stake out the work and give levels, lines and working drawings needed in the construction, * * *.

Any doubt as to the meaning of the contract and accompanying specifications or the plans and drawings prepared especially for the work herein provided, will be explained by the engineer, who shall have the right to correct any errors, or omissions necessary to the fulfillment of their evident intention, and whose decision in such matters shall be final and conclusive and binding upon both parties in the contract.

Payments will be made monthly to the amount of 85% of the work done and value of material delivered on the ground and labor performed, upon the estimates and certificates of the engineer, and 10% will be due and payable upon completion, test and approval by the engineer; and the remaining 5% will be held for a period of six months or until the first of the following May for sidewalk construction, and expended in making such repairs of the said work as the engineer may deem necessary, in case such repairs are neglected by the contractor, and provided all the materials, work, surfacing, walk and paving of streets shall be in good order, the said contractor shall be entitled to recover the whole or such part of the above mentioned sum as may remain after the expense of making such repairs shall have been paid therefrom."

By the above quoted provisions of this contract between the city of Girard and Hannon Contracting Company, which is dated September 24th, 1930, it is seen that the work shall be begun and carried on in such manner as the city engineer shall direct, the city even reserving the right to procure the dismissal of any employe working on the job. This reserved control over the work and the manner of its performance very clearly establishes that the relationship of "independent contractor" does not exist. This reserved control very clearly, we think, establishes the fact that in carrying out the work contemplated under the contract, the city and the contractor were acting concurrently and in furtherance of a common design.

These quoted provisions of the contract place upon the contractor the obligation to keep Randolph Street, as well as the other streets where this work was being done, in repair for a period of six months, or, at least, to remove and abate within the period of six months after the completion of the work any nuisance which the contractor had left in the street due to his performance, or attempted performance of the contract, and very clearly, we think, it is shown in plaintiff's evidence, as well as at the conclusion of all the evidence, that Hannon Contracting Company, under its contract with the city, was bound to remove before the alleged injury to plaintiff any nuisance which it had created. By §3714, GC, the same duty rested upon the city to keep its streets in repair and free from nuisance.

In this case it will be noted that by the terms of the contract the engineer is authorized to construe the meaning of this contract and accompanying specifications, plans and drawings, and that his decision in such matters shall be final and conclusive and binding upon both parties to the contract.

The record discloses that the engineer, without objection, was permitted to testify as follows:

"Q. Now, Mr. Church, at the time of this accident, were you in charge of the laying of these water mains?

A. I was.

Q. Did you make any inspection of the job after it was complete?

A. Yes."

The witness further testified:

"* * * we go back and resurface these trenches before the final estimate is paid to the contractor. * * * It is part of his contract to replace these trenches, as I have explained them, and then we see that this is done before we pay him his final estimate; we make a final inspection of all these trenches before we pay him his final estimate on the work and there was no special exception to this particular spot from any other place that he had laid lines."

under the contract the contractor must keep those in repair during the term of his contract."

* * *

"It is the condition of his contract that he must keep them in repair for a period of six months before his retainer is paid to him."

The record in this case bears out the allegations of the petition in that the contractor, in pursuance of the work devolving upon him under the contract, extended a ditch from Trumbull Street across the sidewalk and into Randolph Street, and, after placing the water pipe in this ditch, the contractor filled the same with the earth which had been removed therefrom, and this earth was rounded up over the filled trench, leaving a hump in the street variously estimated to be from one foot to eighteen inches high, and from two feet to two and one half feet wide.

Looking to the specifications which are a part of the contract, we find it is provided as follows:

"Trenching shall include all excavation of earth, rock, etc., and refilling necessary, including the excavation around hydrants and bells and other structures appertaining to the water line and the disposal of the material by removal or the refilling of the trenches, including rolling, watering and ramming where required by the engineer, all resurfacing and repaving of streets, accommodations of travel and all other incidental work."

We find and hold that the motions made by the defendants below for a directed verdict at the conclusion of plaintiff's evidence, and at the conclusion of all the evidence were properly overruled, and that the defendants were properly joined in this action under the rules of law which we have quoted above.

But it is claimed in this case that the city had no duty to keep this street in repair and free from nuisance other than for the uses of ordinary travel thereover, and that the plaintiff at the time of her alleged injuries, was not using the street in a manner such as would make defendant liable under the provisions of §3714, GC. There is much lack of uniformity in the decisions of our courts relating to the duty owing by the public to safeguard dangerous conditions for the protection of children playing in the streets. In 13 R.C.L., 368, it is said:

"It is well settled that the duty owing to a child upon the highway is at least equal to that owing to an adult, and so long as the child is a traveler the municipality owes it the same duty of having its streets reasonably safe that it owes to other travelers. Its liability in case a child rightfully in the highway is injured by a defect therein is precisely the same as in the case of an adult who is injured while free from fault from a like cause. The authorities are in conflict, however, as to whether or not there is a greater duty owing to the child than to adults. So there is a conflict of authority as to the right of a child to recover for injuries received while playing in the highway. Some courts hold that there is no liability under such circumstances, either on the part of the municipality or private individuals or corporations who place obstructions or make excavations in the street or highway. The weight of authority is, however, apparently to the effect that children may use the public streets of a city for pleasure as well as grown persons may, and that the fact that a child was injured while playing in the street will not prevent a recovery for such injury, at least in the absence of circumstances making it obviously dangerous to play there. But it has been held that in estimating the degree of carelessness with which the city is chargeable, in all cases of this sort, the character of the obstruction is to be considered with reference to the proper uses of the street as a thoroughfare of travel, and not as a place for the recreation of children, and the liability depends upon whether the street is reasonably safe for ordinary travel. It is generally held that a child who is injured while using a sidewalk both for travel and for play at the same time, or who is engaged in play which involves travel over the way, and is not in itself unlawful, may recover."

In the case now before this court for consideration it is not claimed that the city

had by ordinance prohibited the use of the street in question, or the place in question, for sled riding purposes, and it can not be said that the plaintiff, at the time she was injured, was engaged in any unlawful or prohibitive act. There is testimony in the record that the street in question was unsafe for ordinary travel. The child was engaged in a mode of travel upon the street at the time she was injured, and while this travel was for her pleasure only, we can not say that this fact would preclude a recovery. As stated by this court in the case of William McQuaid, Jr., by his next friend v Allen Shale et, Commissioners of Mahoning County, in an opinion delivered March 8th, 1923:

"It might be interesting to speculate as to what percentage of people engaged in traveling upon highways are strictly travelers with some definite purpose or object in view, intending to go to some particular place and for some specific purpose, or to try and determine how many of the numerous automobiles upon the streets are simply being propelled thereon as a matter of pleasure and recreation, and it seems to be somewhat of an unfair construction to me to say that the adult who may be the fortunate or unfortunate owner of an automobile may take it out and use it over the highway simply as a matter of pleasure, not intending to go anywhere or for any purpose, but simply to ride, and is entitled to barriers and rails safeguarding his progress along this particular location, and that the little boy out in the country who has no other means of travel and who cannot progress indefinitely along the highway but is restricted to the length of the declivity along which the sled may move of its own momentum, is not entitled to any protection upon the street."

In view of the fact that the city had not by ordinance made what may be considered a reasonable restriction as to the use of this street, preventing sled riding thereon, we think that the city elected to consider sled riding thereon as an ordinary mode of travel, and that the city is bound with the same liability to keep the street free from nuisance as in the case of other modes of travel.

The question of contributory negligence of the plaintiff, a little girl of ten years of age, was properly submitted to the jury by instruction of the court. This was a case wherein the jury were authorized to determine whether or not the defect in the street at the place where plaintiff was injured constituted a nuisance, and whether or not at the time and place the defendant had contributed proximately to her injury. These issues were decided by the jury in favor of the plaintiff, and there is much credible evidence in the record from which the jury might properly have arrived at their verdict. We can not disturb this verdict on the claim that the same is manifestly against the weight of the evidence or contrary to law.

We have carefully examined all of the errors assigned on behalf of the plaintiff in error and are unable to find that prejudicial error exists upon the record. We do find that substantial justice has been done. The judgment of the Common Pleas Court is, therefore, affirmed.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.