KERCHER, APPELLEE, *v.* CITY OF CONNEAUT, APPELLANT.

492

(No. 462—Decided March 14, 1945.)

*Mr. Howard M. Nazor* and *Mr. W. L. Countryman,* for appellee.

*Mr. Harold E. Kauffman,* city solicitor, and *Mr. Stephen F. Perry,* for appellant.

CARTER, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Ashtabula county. The parties will be designated as plaintiff and defendant. Due to the numerous issues involved, we shall state the facts quite fully from the pleadings.

The cause was tried in the Common Pleas Court and a verdict was rendered in favor of plaintiff for $5,000. Motion for a new trial was overruled and judgment was rendered on the verdict. The operative facts, as alleged in the petition of plaintiff, are substantially as follows: The defendant is a municipal corporation. Among certain dedicated streets under its control is one known as Broad street which extends in a northerly and southerly direction, is paved and is about 40 feet in width from curb to curb. Broad street is depressed to a considerable degree in order to enable the passage of the street under the railway right of way of the New York Central Railway Company. The tracks of the railway company are carried over Broad street by means of certain cement construction. At a point about twenty-five feet north of the railway underpass, the west side of the street was out of repair and dangerous in that at the time herein mentioned and for many months prior thereto there existed in Broad street a hole irregular in shape, about thirty inches in width, thirty-five inches in length and about eight inches in depth, which hole constituted a nuisance in the street and should have been repaired, lighted, or in some way guarded. The defendant knew of this dangerous condition of the street, or in the exercise of its duty imposed by law should and could have known of such nuisance, but failed and neglected to in any way remove, light or guard the nuisance. At about the hour of six o'clock a. m. on April 18, 1943, as plaintiff was proceeding southerly on his

bicycle on the above-mentioned portion of Broad street, it being then dark, his bicycle was caused, by reason of the open, unlighted and unguarded nuisance in the street, to go into the hole and plaintiff was precipitated down to and upon the pavement, wrenching and twisting the muscles and ligaments of his body generally and of the bones of his left hand and wrist in particular. He sustained a transverse fracture in the middle of the index metacarpal bone of the left hand, a fracture of the middle finger, concussion of the brain, laceration of the right side of the temple requiring stitches, contusions at and about the right eye, all of which have resulted in injury to his nervous system generally. He has secured surgical and medical treatment in connection with which the bones of his left hand were set, but, by reason of having been fractured in fragments, his hand has been left in a permanently deformed and weakened condition. The laceration of his temple was closed, and injuries medically treated generally. He is 25 years of age and at the time the injuries were received was in a healthy condition, employed at manual labor earning and able to earn the sum of $150 per month, and he lost three months time by reason of the injuries and has been unable to resume his former employment. He believes and avers that his injuries have incapacitated him from earning such livelihood and progressing in his employment as was possible before the receipt of his injuries and that defendant was unlawfully negligent and careless in the following respects: In permitting a place of danger to remain in the public street, when the defendant knew or in the exercise of ordinary care could and should have known thereof; in failing and neglecting to inspect the street to the end of ascertaining its condition and dangers, as aforesaid; in failing and neglecting to repair the hole in the street and to remove the

nuisance under the circumstances as aforesaid; in failing and neglecting to place a guard of some description about the place of danger in the public street; and in failing and neglecting to place a light at the place of danger so that persons lawfully using the street might be warned thereof. He further avers that each of the unlawfully negligent and careless acts and omissions of defendant was the proximate cause of his injuries; and that plaintiff had no knowledge of any of these acts of omission on the part of defendant. He prays judgment in the amount of $15,000.

An answer was filed, the material parts of which are as follows:

Defendant admits that it is a municipal corporation as alleged in the petition but denies all and singly the other allegations in the petition contained, and by way of separate defense says that if it should be found that the defendant was guilty of any negligence in any respect, which it denies, the accident and injuries, if any, which plaintiff received were proximately contributed to by his negligence; that one of the acts of negligence of the plaintiff which contributed to his injuries was that plaintiff rode the bicycle on the street between sunset and sunrise of April 18, 1943, without having the bicycle equipped with a lamp and without keeping a lamp lighted, in violation of section 191 of the revised ordinances of the city of Conneaut, which ordinance was then and there and still is in full force and effect, and provides:

"Section 191. It shall be unlawful for any person or persons to ride a bicycle within the city of Conneaut, Ohio, without having such bicycle equipped with a good bell, which shall be rung at all times when necessary to warn people of the approach of such rider, and without having such bicycle, between sunset and sunrise, and being ridden upon the streets of Conneaut,

equipped with a good lamp, which shall be kept lighted between such times.''

Defendant further alleges that plaintiff was guilty also of other acts of negligence not herein specified in detail which directly contributed to his injuries, and prays that the petition be dismissed.

A reply was filed denying each and every allegation contained in the answer except allegations which are admissions of allegations contained in plaintiff's petition.

Twelve separate assignments of error are urged in the brief of defendant. They are as follows:

First, the trial court erred in overruling defendant's motion for a directed verdict upon plaintiff's opening statement.

Second, the trial court erred in excluding competent testimony offered on behalf of the defendant.

Third, the trial court erred in refusing to instruct the jury that the testimony of Thomas Spellacy on cross-examination with relation to his convictions in Municipal Court could be considered as reflecting on his memory and testing his recollection.

Fourth, the trial court erred in overruling defendant's motion for a directed verdict at the close of the plaintiff's case.

Fifth, the trial court erred in refusing to charge the jury before argument as requested by defendant in the second request to charge.

Sixth, the trial court erred in refusing to charge the jury before argument as requested by defendant in the fourth request to charge.

Seventh, the trial court erred in refusing to charge the jury before argument as requested by defendant in the sixth request to charge.

Eighth, the trial court erred in refusing to charge the jury before argument as requested by defendant in the eighth request to charge.

Ninth, the trial court erred in the general charge to the jury.

Tenth, the trial court erred in overruling the defendant's motion for a new trial.

Eleventh, the judgment was excessive.

Twelfth, the judgment is against the manifest weight of the evidence.

As to the first error assigned, that there should have been a directed verdict upon plaintiff's opening statement, suffice it to say that we have read plaintiff's opening statement and, assuming a cause of action is set out in plaintiff's petition, which we will discuss later on in this opinion, we are satisfied that the court was not in error in overruling defendant's motion on that ground.

As to the second error urged, that the court erred in excluding competent testimony offered on behalf of defendant, the testimony of a witness by the name of Spellacy was presented by way of deposition, the deposition having been taken at the insistence of plaintiff. The following question in the deposition was propounded to the witness by counsel for defendant on cross-examination:

"Q. Had he been looking right straight ahead all the time you watched him? All the time you watched him he was looking that way, right straight ahead, he wasn't looking down at the pavement?"

On the trial plaintiff objected to the form of the question and the court sustained the objection. Defendant excepted and read into the record the following answer the witness gave to the question in the deposition:

"A. I didn't say he was looking down at the pavement. I did say that he was looking straight ahead."

It is claimed that no objection on any ground was made to this question at the time of taking the deposition but that objection was made for the first time at

the trial and it is urged that to exclude the answer was highly prejudicial to defendant. We are cited to Section 11547, General Code. Assuming that the court should have overruled the objection by reason of the provisions of Section 11547, we think no prejudicial error intervened in this regard. It is hardly conceivable that, had the question been answered, the jury would have found for defendant; in such a situation we think the provisions of Section 11364, General Code, apply. The witness testified that the plaintiff was looking straight ahead when he struck the hole. That question was answered and in the record, i. e., "He was looking straight ahead." There was no prejudicial error in this regard.

As to the third error urged, that the trial court erred in refusing to instruct the jury that the testimony of Thomas Spellacy developed on cross-examination with relation to his convictions of certain offenses in Municipal Court could have been considered as reflecting on his memory and testing his recollection, this error is predicated upon the theory that Spellacy was unable to remember any of these convictions while he could remember occurrences very vividly on April 18, 1943, that defendant was entitled to have the jury consider the inference from this testimony, and that if the witness could not remember these convictions which affected him personally, he certainly could not remember the accident in such detail without a great deal of prompting by some one. It is claimed that, inasmuch as the court did not so instruct the jury, the defendant could not even comment on that point of argument without being guilty of misconduct. We are unable to understand the logic in the claim that the defendant could not comment on that point in argument. Nowhere was there any instruction that counsel could not comment on that fact to the jury. Certainly counsel could have so commented without being guilty

of any misconduct; counsel have the undoubted right in their arguments to draw inferences from established facts and argue those inferences. Secondly, we know of no law that required the court to give that instruction. We do think that the court in its discretion, on application having been made by counsel, could have instructed the jury that it could take into consideration the fact that the witness apparently could not remember all of these convictions. However, the court refused to do so. Such was not an abuse of discretion on the part of the trial court. The court in its general charge charged on the question of weight of the evidence and informed the jury that it was to weigh the evidence, which of course we must assume it did, and in weighing the evidence without doubt the jury took that fact into consideration. We must assume that jurors will take into consideration testimony which indicates untruth without being instructed by the court that they may do so. There is no reversible error in this regard. We find nowhere in the record where evidence was introduced that there were any convictions of offenses. Further, the evidence discloses that the witness did not deny all the convictions claimed but admitted arrests for certain offenses in the city of Conneaut. The court at the time made the following comment:

"By the court: Well, the only purpose would be testing his recollection of things that happened of more recent date than matters to which he testified. It might be admitted for that purpose. Do you claim any other purpose for it?

"Mr. Kauffman: No."

The fourth assignment of error is that the court erred in overruling defendant's motion for a directed verdict at the close of plaintiff's case. We might suggest that this assignment of error was waived by reason of the fact that the case proceeded and defendant's evidence was introduced. *Halkias v. Wilkoff Co.,* 141

Ohio St., 139, 47 N. E. (2d), 199. However, an examination of the record discloses that a similar motion was made at the conclusion of all the evidence. Therefore, we are disposing of this claimed error, it being urged that plaintiff's evidence failed as a matter of law to show a cause of action against defendant, under the provisions of Section 3714, General Code. It has been held in this state repeatedly that municipal corporations are not liable for common-law negligence when operating in a governmental capacity unless made so by statute. We must look, therefore, to the statute fixing liability of municipal corporations. Section 3714, General Code, provides:

"Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, acqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

This statute has been construed many times by the courts of this state, not always harmoniously. Some courts have laid down the doctrine that it is the duty of the court to define a nuisance, and the function of the jury to determine whether a condition or situation presented constitutes a nuisance. It is somewhat difficult to comprehend just what is contemplated by that holding. Is it always a jury question whether a nuisance exists in a particular case? We think there might be instances wherein the court would be entirely justified in holding as a matter of law that a certain condition existing in the street did not constitute a nuisance. The true rule as we understand it is: If the condition of the street is in such a state of disrepair or otherwise wherein reasonable minds might differ as to whether a nuisance exists, in that event a jury ques-

tion is presented. Of course, the city must have actual or constructive notice of such condition and a reasonable length of time thereafter to repair same before liability arises. There has existed over the years some apparent misunderstanding with reference to the use of the word negligence in charges to the jury and as used in decisions of our courts, and it has been urged that negligence has no place in a charge under Section 3714, General Code, the liability being created by statute. It is the view of the writer of this opinion that this confusion is due largely to a possible misunderstanding of the word, negligence, as used in charges and decisions. We think it clear from these decisions that the negligence referred to therein refers to the failure or neglect on the part of the city to repair or remove such nuisance after knowledge, actual or constructive, of its existence. A nuisance in the street, without knowledge actual or constructive, creates no liability as against the municipality. There must be knowledge as well as the existence of a nuisance and no doubt this is the negligence to which reference is made by our Supreme Court in the recent case of *Taylor* v. *City of Cincinnati,* 143 Ohio St., 426, 55 N. E. (2d), 724, wherein the court speaking through Judge Hart held that Section 3714, General Code, provides a general rule of conduct and makes negligence the basis of liability for its violation unless an absolute nuisance is proven to exist. *City of Cleveland* v. *Amato,* 123 Ohio St., 575, 176 N. E., 227; *City of Cleveland* v. *Pine,* 123 Ohio St., 578, 176 N. E., 229, 74 A. L. R., 1224. Those cases are referred to in the *Taylor case, supra,* with the observation by the court, that those cases have never been modified or reversed and in the judgment of the court clearly state the basis of liability under Section 3714, General Code. It is, therefore, clear that negligence is involved in an action prosecuted under Section 3714, General Code. The negligence may fur-

ther consist of a failure on the part of the municipalities to keep their streets in a reasonably safe condition for travel in the ordinary modes; when not so kept, of course, a nuisance exists; if so kept, no nuisance exists. With these general observations let us now pass to the errors urged in the instant case.

It is urged that the duty imposed by Section 3714, General Code, is not an absolute duty, that its duty ends if it keeps its streets in a reasonably safe condition for travel. In this statement we concur unhesitatingly. It is urged further that the reasonably safe condition does not mean such under all circumstances, but only when the highway is used for travel in the usual mode, and counsel cite *Taylor* v. *Cincinnati, supra,* wherein the court so holds. Conceding such to be the law, it is urged that the hole in question created no liability as against the city for the reason that the hole, even taking the testimony of plaintiff's witness that it was three by two and one-half feet in length and width and eight inches deep, as a matter of law would create no liability to the plaintiff for the reason that the street was reasonably safe for public travel in the ordinary mode. It is urged further that plaintiff in using a bicycle at the time was not using the highway in accordance with the usual mode of travel; that had he been driving a car or other ordinary vehicle commonly used on the highway the accident would not have happened and therefore there would have arisen no liability on the part of the city. That is an ingenious argument, one never before raised during my nineteen years of service on the bench. Some authorities outside Ohio have been cited apparently supporting to some extent that argument. It is a well-known fact that bicycles have been in use in this state for many years and quite extensively used upon our streets and highways as a means of transportation. The Legislature, in adopting the Uniform Traffic Act, Section 6307-

2 *et seq.*, General Code, recognized a bicycle as a kind of vehicle. Bicycles are also recognized in Sections 6307-40 and 6307-50, General Code, and in other sections of our Uniform Traffic Act. In the case of *Sherburn* v. *Armstrong*, 36 Ohio Law Abs., 66, 42 N. E. (2d), 716, it is held that a bicyclist approaching an intersection in a lawful manner has the right to proceed uninterruptedly through the intersection in preference to a motor vehicle approaching from the opposite direction and attempting to make a left-hand turn across the path of the bicyclist. In 20 Ohio Jurisprudence, 630, Section 1, is found the following:

"A highway is a road or way open to the public at large, for the purpose of travel or the transportation of persons or property, without distinction, discrimination or restriction."

It is, therefore, quite clear that the Legislature of this state has recognized bicycles as a means of transportation over our highways, afforded protection to a bicyclist and subjected him to restraints. As civilization advances new methods of transportation upon and over our highways will no doubt be developed. A bicycle is one of those new developments and if they are to be excluded from the provisions of Section 3714, General Code, the Legislature should so provide. The statute makes no exception but provides that the streets be kept free from nuisance. We think the statute includes one riding a bicycle. Plaintiff had the undoubted right to travel over this street on a bicycle.

There is another matter to be noted in passing. There is an ordinance of Conneaut prohibiting the riding of bicycles upon the sidewalks. A bicyclist, therefore, is required either to cease using same or operate it on the street. While this fact would not alone impose liability on the city provided a bicyclist was not of a class included in Section 3714, General Code, it is mentioned as a circumstance in the case. This court

in the case of *City of Girard* v. *Smrek*, 52 Ohio App., 135, 3 N. E. (2d), 560, held that coasting might be considered an ordinary mode of travel in the absence of a restricting ordinance. While the facts in that case are not identical with the instant case, a principle is announced therein. The judgment in that case was refused certification by the Supreme Court.

We might observe further that, assuming this hole was four, five or six inches in depth and the size as indicated by the evidence, to hold such would not be a nuisance as a matter of law would be in our judgment exceeding our authority. Such hole might not seriously damage a car passing over it. On the other hand, no doubt every car traveling over a hole of this size and depth would to some extent be damaged, particularly a tire, although the hole might not be of sufficient depth to cause a wheel to collapse, or the cutting of a tire causing a blowout; nevertheless, such a hole would without doubt damage to a certain extent every car traveling over it in the usual mode. It could hardly be said that if a tire was cut by being driven over the hole that a cause of action would not arise. A nuisance need not be of such proportions as to cause the smashing of a wheel or overturning of a car or cause personal injury in order to constitute an actionable nuisance; as said by our Supreme Court in the case of *Taylor* v. *Cincinnati, supra*: " 'Nuisance' is a term used to designate the wrongful invasion of a legal right or interest."

It is urged that a bicycle could be easily upset or damaged by a hole which would in no way interfere with an automobile or horse-drawn vehicle, and in order to keep the streets in reasonably safe condition for bicycles it would make it expensive for the municipalities. We might observe that it is a rare occasion when a bicyclist brings an action in damages against a municipality. As I now recall, this is the only case

ever brought to my attention while serving upon the bench. If this be the general rule then municipalities are not overcrowded with actions of this character. We think the court committed no error in refusing to state to the jury that Section 3714, General Code, had no application to one riding a bicycle. We think that under all the evidence in this case a jury question was presented as to whether a nuisance existed in the street which was the proximate cause of plaintiff's injuries, and that reasonable minds might differ on that issue and as to whether plaintiff was guilty of contributory negligence.

It is urged further that a verdict should have been directed on the ground that plaintiff's evidence raised a presumption of contributory negligence which was not refuted or counterbalanced by evidence of equal weight or countervailing effect. It is pointed out that plaintiff admitted he rode the bicycle down towards the subway in semidarkness, the bicycle not being equipped with a good lamp as required by an ordinance of the city of Conneaut. The ordinance provides that a bicycle must be equipped with a good lamp and kept lighted between sunset and sunrise. Nothing is said about the candle power of such light, neither is there any reference made in the ordinance to the fact that the lamp must be attached to the bicycle. It is stipulated that the sun rose in Conneaut on the particular morning at 6:40 and it is claimed that the evidence is undisputed that the accident occurred around 6:20 and not later than 6:25 a. m. We have read the testimony of the witnesses bearing on the question as to just what time the accident happened. There is some testimony by the plaintiff himself that it happened about 6:20 to 6:25. However, a perusal of his entire examination and cross-examination makes it somewhat doubtful under his testimony as to just what minute the accident happened. The court left that issue to the jury. Under

the evidence we think there was no prejudicial error in the court's action in this regard.

Disposition has heretofore been made in this opinion as to the duty of the municipalities to keep their streets in repair and free from nuisance, and we have held that this requirement applies in favor of a bicyclist using the street. Not only must a municipality keep its streets free from nuisance, but it must keep its streets in reasonably safe repair. Was the street in question in reasonably safe repair? One of the witnesses for the city testified that in his judgment the street was dangerous. It is urged that the witness meant in the operation of bicycles thereon. However, the witness did not so limit his answer and we find no place in the record where such intention is expressed.

As to driving into the fog, the testimony by the plaintiff is substantially as follows: There was a layer of fog which extended a short distance above the street at the place in question. It was not a general heavy fog.

Under the circumstances could it be said that, by so driving, plaintiff was guilty of negligence as a matter of law or was that question properly submitted to the jury? Under these circumstances as disclosed by the evidence would an ordinarily prudent person not knowing the hole was there, as plaintiff so testifies, dismount from his bicycle and walk through this small amount of fog or would an ordinarily prudent person have proceeded as did plaintiff? We think that under these circumstances for one to have dismounted and walked through this layer of fog would have been extraordinary care; that plaintiff did exactly what an ordinarily prudent person would have done under the same or similar circumstances; that reasonable minds might reach different conclusions as to negligence on the part of the plaintiff in so doing; and that we could not hold as a matter of law that plaintiff was guilty of contributory negligence, such being a jury question.

Now, as to the bicycle not being equipped with a good lamp as required by the city ordinance, it is claimed by counsel for plaintiff that this ordinance was not in effect at the time. The court charged the jury that the ordinance was in effect. We think the court was not in error in so doing. We are, therefore, assuming it was a valid ordinance which provided that the bicycle must be equipped with a good lamp which must be kept lighted, and let us assume further that the plaintiff was guilty of negligence as a matter of law in operating the bicycle without it being equipped with a good lamp. Such would not as a matter of law preclude plaintiff's recovery, as proximate cause is involved which was a jury question. *Smith* v. *Zone Cabs,* 135 Ohio St., 415, 21 N. E. (2d), 336, a Trumbull county case wherein this court held as now urged by defendant in this case. The Supreme Court reversed the judgment of this court, however, by a divided court and held that the fact the plaintiff concededly violated an ordinance in crossing a street at a place where prohibited did not as a matter of law defeat recovery, and the court permitted recovery. In conformity with that holding, if plaintiff in this case was operating his bicycle without it being equipped with a good lamp or with no light at all, a jury question would be presented as to proximate cause.

It is further claimed that as a matter of law the bicycle was not equipped as required by ordinance and that the court should have so charged the jury instead of permitting the jury to pass on that question. Black's Law Dictionary (3 Ed.), 672, under ''Equipment,'' states, ''an exceedingly elastic term, the meaning of which depends on context,'' and cites a number of authorities sustaining the statement. It will be observed that the ordinance does not provide that the lamp must be attached to the bicycle nor whereon the lamp shall

be attached. We are of the view that "equipped" does not require attachment to the bicycle. What is the meaning of lamp as used in this ordinance. A lamp is defined as any device for producing artificial light. In this case, plaintiff had in his hand clasped to the handlebar a two-cell flash light which cast its rays, according to some of the testimony in the record, a number of feet upon the pavement ahead of the bicycle. Let us assume that plaintiff carried on this bicycle a large light which illuminated the pavement ahead much better than the ordinary lamp used upon a bicycle, and sustained the injuries, could it be said that because he did not have a bicycle lamp attached that he could not recover? Such could hardly be urged. There is nothing in the ordinance requiring the light to be of any particular candle power, but a good lamp which shall be kept lighted. Who is to determine whether such lamp is a good lamp and whether the bicycle was equipped with such? Unquestionably the jury. Having reached the above conclusion, we are of the opinion that the court was not in error in submitting the questions as to whether the bicycle was equipped with a good lamp and whether the ordinance was violated.

The fifth assignment is that the trial court erred in refusing to charge the jury before argument as requested by defendant in the second request to charge. The record fails to disclose that these requests were presented as a series, or separate and independent of each other. However, the court proceeded to give and refuse some of these requests.

The second request is:

"The court instructs you that an ordinance of the city of Conneaut, Ohio, has been introduced in evidence, which, so far as the same is applicable to the facts of this case, reads as follows: 'It shall be unlawful for any person or persons to ride a bicycle

within the city of Conneaut, Ohio, without having such bicycle, between sunset and sunrise, and being ridden upon the streets of Conneaut, equipped with a good lamp, which shall be kept lighted between such times.' I further instruct you that at the time of this accident said ordinance was a valid and binding ordinance of the city of Conneaut, Ohio; that at the time said accident occurred the plaintiff violated said ordinance, and that such violation was negligence as a matter of law on the part of the plaintiff, and if such negligence proximately contributed to plaintiff's injury he cannot recover in this action, and your verdict should be for the defendant.''

This request was properly refused, due to the observations made above, as it was requested therein that the court say to the jury that plaintiff violated the city ordinance.

The sixth assignment of error is that the trial court erred in refusing to charge the jury before argument as requested by defendant in the fourth request to charge. The fourth request is:

''The court instructs you that if you find that the plaintiff carried a lighted flashlight in his hand at the time of this accident, without having said bicycle equipped with a lighted lamp or light at the time of said accident, and you further find that said accident occurred before sunup on April 18, 1943, that would be a violation of this ordinance on the part of the plain-tiff.''

It will be observed in this requested charge that it was left to the jury to determine whether the accident occurred before sunup. In the light of the above observation no error was committed by the trial court in refusing this request as the requested charge contains therein the words, ''Without having said bicycle equipped with a lighted lamp or light at the time of said accident,'' in other words, that the bicycle must

be equipped with a lighted lamp and that the lighted flashlight would not be sufficient. This charge as requested also would be confusing to the jury.

The seventh assignment of error is that the trial court erred .in refusing to charge the jury before argument as requested by defendant in the sixth request to charge. The sixth request is:

"The court instructs. you that the following ordinance was a valid and binding ordinance of the city of Conneaut, Ohio, at the time of this accident, so far as the same is applicable to the facts of this case: 'It shall be unlawful for any person or persons to ride a bicycle within the city of Conneaut, Ohio, without having such bicycle, between sunset and sunrise, and being ridden upon the streets of Conneaut, equipped with a good lamp, which shall be kept lighted between such times.' I instruct you that the duty of the city of Conneaut imposed by Section 3714 of the General Code of Ohio to keep its streets open, in repair and free from nuisance requires only that it keep its streets in a reasonably safe condition for ordinary lawful travel over the same. And if you find that plaintiff at the time of said accident was violating said ordinance, then I say to you that plaintiff's use of said street at the time of said accident was not an ordinary lawful use thereof, and in that event he cannot recover in this action and your verdict should be for the defendant."

It will be observed that there is contained in this request the following language: "If you find that plaintiff at the time of said accident was violating said ordinance, then I say to you that plaintiff's use of said street at the time of said accident was not an ordinary *lawful* use thereof, and in that event he cannot recover in this action and your verdict should be for the defendant." We are not inclined to hold that if one violates a traffic statute or a city traffic ordinance, however insignificant the violation, he cannot thereafter

maintain an action or recover against another who was or might have been negligent or failed to perform a statutory duty. We would eliminate proximate cause entirely from the picture in so holding. In the instant case, suppose that the city admitted a nuisance existed in the street in question, that the city had knowledge and sufficient time to repair, and that plaintiff admitted he violated the city ordinance as claimed, would that in and of itself preclude the right of plaintiff to bring his action and submit the question of proximate cause to the jury? The failure to have the bicycle equipped, as claimed by defendant, might not have been the proximate cause and the jury might have properly found that the hole in the street constituted the proximate cause. *Smith* v. *Zone Cabs, supra.* To hold that, when established or admitted, violations of statutes or ordinances preclude recovery as a matter of law would be flying in the face of all the holdings wherein recovery was permitted even though a violation of specific requirements was established or admitted. The case of *Mossman* v. *City of Cincinnati,* 26 Ohio Law Abs., 61, 34 N. E. (2d), 246, has been cited which holds that the use of a street in violation of law can not be characterized as a use in the ordinary way. We can not concur in that holding. Could it be said that these violations when admitted preclude recovery even though they be specific requirements? We think not, neither do we think such is the established rule in this state. Many states do not make violations negligence *per se* and Ohio has adopted that rule.

The eighth assignment of error is that the trial court erred in refusing to charge the jury before argument as requested by defendant in the eighth request to charge. That charge is as follows:

"One who voluntarily goes upon a street which he knows to be dangerous is guilty of such negligence as to preclude a recovery in case of injury. And so I say

to you that if you find that at the time of the accident the plaintiff knew of the existence of the hole in the pavement, and you further find that at the time of the accident said hole was dangerous, and that plaintiff knew, or in the exercise of reasonable care should have known of said danger, then I say to you that it was negligence for the plaintiff to have run into said hole, and that such negligence would prevent the plaintiff from recovering in this action, and your verdict should be for the defendant.''

The first sentence states that one who voluntarily goes out on a street which he knows to be dangerous is guilty of such negligence as to preclude a recovery in case of injury. We think that is a dangerous doctrine to lay down and is misleading to the jury. We all know that, due to modern traffic, the street or highway is a dangerous place to be. Must we stay off the highway because of that fact and if we do not, but go upon the street, in case of injury must we be precluded from recovery even though we might have been at the time in the exercise of ordinary or the greatest degree of care? We think not, as again proximate cause is eliminated. At the present time and for the last month or so our highways in many places are and have been in a dangerous condition for traffic. If we have knowledge of that fact and go upon the highway and are injured must we be precluded from recovery? We think that the charge was misleading and properly refused. As to the fog, we have already made reference to this urged error; suffice it to say that plaintiff testified he had no knowledge of the hole in the street. On motion for directed verdict we must resolve the evidence most favorable to the one against whom the motion is directed. The case of *Davis* v. *Shutrump Co.*, 140 Ohio St., 89, 42 N. E. (2d), 663, cited, was a case which arose in Mahoning county. That case is clearly distinguishable from the instant case.

The ninth assignment of error is that the trial court erred in the general charge to the jury. In such charge the court charged that the defendant was not only liable under Section 3714, General Code, to keep its streets open, in repair and free from nuisance, but was also liable for negligence as specified in the petition, for common-law negligence and for failure to perform other duties not contemplated by Section 3714, General Code. The first specification of negligence is as follows: Permitting a place of danger to remain in the public street when defendant knew or in the exercise of ordinary care could and should have known thereof. This specification contemplates a nuisance. The court charged the jury as follows:

"As law applicable to this case, you are further instructed that as a municipal corporation, the defendant city had the care, supervision and control of its streets and that by the provisions of General Code Section 3714, it was its duty to cause them to be kept open, in repair and free from nuisance. The court says to you that the negligence, if any, of the defendant, as alleged by the plaintiff would, in effect, be the failure to exercise ordinary care on its part in keeping its streets open, in repair and free from nuisance and in a reasonably safe condition as required of it under Section 3714, General Code, heretofore called to your attention, and in that connection, the court says where there is a permitted maintenance on behalf of the city or a continued condition which renders travel thereon dangerous, a municipality is liable for the injuries which are a direct and proximate result of the maintenance of that condition for such time that it should have acquired knowledge thereof and had a reasonable time thereafter to remedy same. Therefore, if Broad street, in this particular action, at the time complained of, was in a dangerous and unsafe condition, then such condition was a nuisance and its continued existence

negligence. Bear in mind, however, that the city must have had notice of such condition or same must have existed for such a time that it was charged with notice and upon this question of notice you are further instructed that the existence of a dangerous defect in the street in order to be sufficient to constitute a liability on the part of the defendant city, it was necessary that such defendant city or the officer or officers whose duty it was to repair such defect or abate such nuisance should have, as I have heretofore stated, actual notice of the same or it must have existed for such a length of time and under the conditions that the city, in the exercise of ordinary care, would or should have had knowledge of its condition.

"Nuisance in this connection means something done or omitted to be done which has the effect of prejudicially and unwarrantably affecting the rights of another person and works damage or injury to such person. In other words, the term, nuisance, as used herein means anything wrongfully permitted which injures or annoys another in the enjoyment of his legal rights. To permit a street or a portion thereof to be in a condition dangerous to persons passing over it in the usual and ordinary modes or so as to seriously interfere with the convenient use of same would be to permit a nuisance to exist. The defendant corporation was, therefore, charged with the duty of not permitting a nuisance dangerous to the safety of persons using said street in some usual or ordinary mode to exist upon Broad street, where it is claimed by the plaintiff the accident in this case occurred. A failure of the defendant corporation to exercise this requisite degree of care in the maintenance of the portion of Broad street described in this case would be an act of negligence on the part of the defendant, however, by a preponderance of the evidence and that same was a proximate cause of the accident in order to recover.

In any event, this obligation of the city included the entire traveled portion of the street at the location of said accident or, in other words, all that portion or portions used by a prudent person thereon in the usual and ordinary modes of travel or use and a duty to keep the street at that place with regard to its location, its surroundings and environment in a reasonably safe and suitable condition for persons passing along or lawfully using the same. This duty required a reasonable vigilance in view of all the surroundings, that is, ordinary care, but did not exact that which was impracticable.

"Municipal corporations are not insurers of the safety of their public ways or of the lives and limbs of persons passing over them. The defendant city was not required to exercise such extraordinary care as would absolutely prevent accidents but it was the duty of the defendant city to exercise ordinary care as herein defined, to keep all portions of its streets open for public use and at the place where this accident occured, in a reasonably safe condition for the use of users of same, and in determining whether such care was exercised by the defendant city you should consider the surroundings and conditions at this point, including the condition of the street, the lighting and the conduct of the city in providing or failing to provide lights at this place or other safeguards to prevent users of this street in the exercise of ordinary care for their own safety from falling over any unnatural obstruction or defect known by it to exist or charged with knowledge of the same, in said street, and all other facts and conditions appearing in the evidence relating to this proposition."

We discover nothing fundamentally wrong in this part of the charge dealing with nuisance. However, we prefer the definition of nuisance as found in *Taylor* v. *City of Cincinnati, supra,* which is as follows:

" 'Nuisance' is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally."

The second specification of negligence is the failure and neglect to inspect the street to the end of ascertaining its condition and dangers. The third is the failure and neglect to repair the hole in the street and remove the nuisance. The fourth is the failure and neglect to place a guard of some description about the place of danger. The fifth is the failure and neglect to place a light at the place of danger so that people might be warned thereof. As to specifications two, four and five, we know of no statutory provisions requiring the city to inspect or place a guard or a light at a place of danger in the street. One of the portions of the charge objected to is as follows:

"By these pleadings are made up the issues of fact for your determination * * *. You will further note that plaintiff alleges * * * that the defendant knew of, or in the exercise of its duty imposed by law, should have known thereof and had failed to remove, light or guard the same, and that said hole was a nuisance in said street. * * * Plaintiff has alleged that defendant was thus negligent: in permitting a place of danger to remain in said street, in failing and neglecting to inspect said street to ascertain its condition, in failing and neglecting to repair said condition after it knew of same or should have known of same, in failing and neglecting to safely guard said place of danger, or cause a light at said place that would warn persons lawfully using said street in its condition. You will note that plaintiff, therefore, has alleged that defendant was negligent in failing to exercise ordinary care in the discharge of its duties over the streets of said city."

Under the holding in the *Taylor case, supra,* and

other Ohio cases cited therein, we can see no objection to this charge. The court nowhere charged that it was the statutory duty to inspect, guard or light the particular place in question, but did state that plaintiff has alleged that defendant was negligent in failing to exercise ordinary care in the discharge of its duties over the streets of the city, in other words, that the city did not exercise ordinary care in these respects in the maintenance of its streets, in repair and free from nuisance. Undoubtedly this is the law in this state and so held by a long line of decisions of our highest court down to and including the *Taylor case, supra.* We are referred to the cases of *Rudibaugh* v. *City of Niles,* 56 Ohio App., 451, 11 N. E. (2d), 193, and *Dzuracky* v. *City of Campbell,* 64 Ohio App., 521, 29 N. E. (2d), 49, which were cases arising in Trumbull and Mahoning counties, disposition of which was made by this court on appeal from the Common Pleas Court. In the *Dzuracky case* we held that there was no specific duty to guard, inspect or light, but that a failure or neglect to do so might be taken into consideration by the jury in determining whether a nuisance existed, that is, if a nuisance did exist in the street and the place was guarded or lighted and one nevertheless was injured the question would be then presented as to whether the city exercised ordinary care in keeping its streets free from nuisance. Although there is no statutory reqirement that there must be guards or lights placed about a dangerous place in the street, nevertheless, such neglect to do so might be a failure to exercise ordinary care in the keeping of its streets free from nuisance. Negligence is involved when a nuisance exists. *Selden* v. *City of Cuyahoga Falls,* 132 Ohio St., 223, 6 N. E. (2d), 976. In the *Rudibaugh case* this court held that no liability was presented and rendered final judgment for the defendant and what was said with reference to negligence in that case was not necessary

in the disposition thereof. However, as stated in the *Rudibaugh case,* to wit, "a municipality not being liable in tort for common-law negligence but only for a violation of Section 3714, General Code, a charge to the jury which bases the liability of the municipality on the proof of one or more of the 'grounds of negligence' alleged in the petition is highly prejudicial and erroneous." We still adhere to the doctrine that a municipality is not liable in tort for common-law negligence but only for a violation of Section 3714, General Code. However, a failure to keep its streets free from nuisance does constitute negligence and a failure to remedy a nuisance in the street after knowledge and a reasonable time to repair constitutes negligence, that is, a failure to repair or abate the nuisance and a failure to exercise ordinary care to keep its streets in a reasonably safe condition for travel in the usual mode. However, as said in the *Rudibaugh case,* the liability is fixed by virtue of Section 3714, General Code. In the *Rudibaugh case* we find no statement to the effect that the court charged the provisions of Section 3714, General Code. In fact Judge Nichols, speaking for the court, stated in the opinion that an examination of the general charge of the court as well as the special charges given upon request of plaintiff makes it apparent that the trial court based the liability of the municipal corporation upon the ground of common-law negligence. Of course, such would be erroneous. There must be a violation of Section 3714, General Code, before liability is involved and the jury must necessarily be so charged. As said in the case of *Selden* v. *City of Cuyahoga Falls, supra,* Section 3714, General Code, does not by implication impose liability for negligence not involving nuisance, the inference being that if nuisance is involved then the question of negligence arises. Undoubtedly plaintiff had the right to set up want of inspection and failure to guard and light, and if so,

evidence introduced to substantiate same would be proper and it would be proper to charge the jury on the issues of lack of inspection and want of guard or light as bearing on the question of the exercise of ordinary care in keeping the municipality's streets free from nuisance. If the hole in question had been guarded or lighted it could hardly be claimed that such could not have been plead by the city and established by evidence even though a dangerous condition of the street existed. The next portion of the charge objected to is as follows:

"If you find the plaintiff has proved to you by a preponderance of the evidence that the defendant corporation was *negligent as alleged in the petition and submitted for your consideration* and that such negligence was a proximate cause of the injury * * * then your verdict will be for the plaintiff." (Italics ours.)

Of course, this part of the charge must be considered in connection with the whole charge. The court properly charged Section 3714, General Code, and as hereinbefore indicated we conclude that the charge was proper in that regard, and the court further charged it was the duty of the municipality to exercise ordinary care to keep its streets free from nuisance. If the city failed to inspect, light or guard the hole, and such evidenced negligence on the part of the city, then such failure or neglect might be a contribution to the nuisance. Had there been guards or lights and the plaintiff was injured, the jury might have properly found under those circumstances that there was no nuisance in the street which proximately brought about plaintiff's injuries. A jury question was thus presented and the court was not in error in giving this particular part of the charge. Taking the whole charge into consideration we think there was no error therein as urged. If these specifications are proper, and we hold they are, there was therefore presented for the consideration of the jury the question of whether Section 3714, Gen-

eral Code, had been violated and also the question of negligence in failing to exercise ordinary care as hereinbefore indicated. Both propositions were charged by the court which makes this case unlike *Simko* v. *Miller,* 133 Ohio St., 345, 13 N. E. (2d), 914, a case in which the judgment of this court was reversed. In the instant case there was a differentiation between simple negligence and duties imposed by statute which was not done in the *Simko case.*

The tenth assignment is that the court erred in overruling a motion for new trial. This urged error has its basis in the things and matters which have been urged and of which disposition has been made in this opinion. There was no error in refusing to grant a new trial.

The eleventh assignment of error is that the verdict is excessive. We have examined the record in this regard and cannot say that the verdict is so large as to so shock our conscience as to require a reversal on that ground. A jury question was presented as to the seriousness of his injuries and that body concluded that $5,000 was proper damages. Neither is the verdict against the manifest weight of the evidence as urged in the twelfth error assigned. Clearly the jury under the evidence could properly have found in favor of plaintiff.

These being our conclusions, the judgment of the Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

NICHOLS, P. J., and PHILLIPS, J., concur.